UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **Universitas Education. LLC**<br>    **Plaintiff**<br>vs<br>**Jack E. Robinson, III a/k/a**<br>**Jack E. Robinson**<br>    **Defendant** | Middle District of Florida<br>Case: 8:19-mc-30-T-02JSS<br>Civil Action No. 1:15-CV-11848 (DPW)<br>District of Massachusetts |

## MOTION TO DISMISS FOR LACK OF JURISDICTION AND

## RESPONSE TO PLAINTIFF'S OBJECTION

### INTRODUCTION

I, Lillian Granderson, pro se, file this objection to plaintiff's request for sanctions, and ask this court to deny that request because of confusion, misrepresentation of the truth, deception, intent to invade my privacy, illegal overreaching, unsubstantiated allegations, plan to harm me, a 93-year-old Non-Party Witness, through unnecessary stress in a flawed case that has only a plaintiff, no defendant.

In an effort to respond to this unjust motion for sanctions, I have copied terminology and style used in other documents filed in court actions.

Throughout, I refer to plaintiff's attorney as plaintiff. I do not have legal authority to submit.

Let me say at the outset that my deceased son was neither tried, nor found guilty of a criminal act. Therefore, plaintiff's statements about my son's conduct are unproven. It is apparent that since my son is dead, plaintiff wants to hold me accountable for whatever happened with Universitas and is badgering me to pay a price.

### PERSONAL PROFILE

After graduating college and completing diplomatic tours, I worked for 37 years owning and operating multiple nursing facilities and rest homes. In that capacity, I managed medical needs of elderly clients, who were, then, where I am today in the cycle of life.

I am not a criminal suspect, who may need to hide, dip, dodge, or abscond. At this time, I ask this court not to issue sanctions against me for acts of obstruction or evasion, which are not supported by evidence.

From this preface, I state the following:

## NO JURISDICTION

When the Federal Judge in Tampa closed the case, I was distracted by illness and death. I thought that he may have been acknowledging the fact that this case is flawed; there is only one party, the plaintiff. There is no defendant.

I asked whether, in a federal court, the case is "complete" with only one party. I was told "No," and was reminded by Attorney Williams that she raised that issue when we went to the deposition that was scheduled in Sarasota.

I heard her say to plaintiff that the federal rules require the defendant be served before notice of deposition is sent out. Since the defendant is dead, she asked who was served in his stead. Plaintiff said that despite absence of a defendant, the Massachusetts judge told him to move forward with the discovery of assets.

Attorney Williams objected and said that the federal judge had not waived the federal rule that requires that a defendant be served. She said that I would answer questions under oath, but would not be participating in a "deposition."

Attorney Williams told me that she also raised the issue of the defendant not being served during a telephone hearing with the federal magistrate. She was told that she had to object within 14 days from receipt of the subpoena. I had hired Attorney Williams after 14 days of having received the subpoena. It was too late.

Attorney Williams gave me a brief education of requirements of a federal case. She said that there must be a "federal question" and we must have "diversity of jurisdiction." It seems to me that where the plaintiff is the only party, there can be no diversity, which is required.

I received in the mail copies of a pleading that plaintiff sent to the court. In it, plaintiff refers to Massachusetts Judge Woodlock's authorization for continued discovery of assets. I think that it is important for the Florida court to see other discussion that Judge Woodluck had with plaintiff about appointment of a substitute for my deceased son. Discussion during the hearing on February 5, 2019 focused on a question that I have about jurisdiction. **Exhibit A**, Status Conference, Boston MA, April 12, 2019, p. 3.

I must assume that if jurisdiction is lacking in the Florida court, it is also absent in the Massachusetts court. So, I ask that the case be dismissed for Lack of Jurisdiction.

Based on this reasoning, I ask the court to cancel the deposition and dismiss any further action in this flawed case, where there is no diversity of jurisdiction.

## I AM CONFUSED

As background, I tell you that Attorney Williams spoke with me at the repass after my sister's funeral. She informed me that the federal judge in Florida had closed this part of the case. Later, I asked her if there were any more action on this case. She briefly explained that the case had been closed "without reservation" of issues to be addressed by the court. She also said that she had received a phone call from plaintiff, who referred to this court having closed the case.

I was confused when I was served, personally, and received mail about the previously closed case.

Earlier, I had received a copy of a transcript of a Massachusetts hearing. I was instructed to carefully read the conversation between the judge and plaintiff, so that I could have a more complete understanding of what to expect in Florida. **Exhibit B,** Status Conference, Boston MA, April 12, 2019, pp. 3-10.

The judge said that he would allow plaintiff the time that he needed to finish his discovery. Then he would grant a motion for summary judgment in the case. I did not understand the meaning of all of that. The judge also said that he would remain "reactive" rather than "proactive" about there being no substitute for defendant, and about an Order of Summary Judgment. I had to make some assumptions about that perceived assurance. **Exhibit C,** Status Conference, Boston MA, April 12, 2019, p. 10.

## I GAVE WRITTEN NOTICE

After I gave notice to this court, I was unavailable because of illness that requires two (2) surgeries, therapy, and rehabilitation.

I submitted a legitimate statement, from a licensed surgeon, that outlined the surgery and rehabilitation schedule.

For the record, let me emphasize how hard it is to find a doctor, who will perform surgery on a 92-year old patient.

It is also hard for a 92-year-old patient to have confidence in the performance of a surgeon and an anesthesiologist, and have a reasonable sense of survival.

I am speaking about my survival of multiple surgeries. I am focused on my quality of life.

I was consumed by thoughts and considerations of my medical outcome.

I gave my attention to my extremely painful medical condition, which rendered me immobile, sleep deprived, and suffering with compromised memory.

Before my surgery, I had no notice from plaintiff of date, time, or place for deposition.

I did not have the availability, energy, mindset, desire, or interest to escape capture, avoid personal service or refuse mail delivery.

I did neither.

I emphatically say to the court that my actions do not raise to the level of ordering sanctions against me.

**NO FORWARDED MAIL**

In preparation for the surgery and subsequent down time, I prepaid my accounts. Therefore, I did not expect mail that would require my urgent attention.

And, I did not get any.

I had my mail forwarded. When I reviewed my correspondences after my surgery, I did not see any forwarded from plaintiff that had been sent from either my Florida or Massachusetts address. Also, I did not see any return notices among plaintiff's exhibits.

Plaintiff knows my addresses. I did not dodge any suggested attempts to reach me. I did not see any mail come in. Also, I am not a party to this case. I was under no court order to report my location, my schedule, or my medical outcome.

I emphatically say to the court that my actions do not raise to the level of ordering sanctions against me.

**I UNDERWENT SURGERY**

With two surgeons considering my risky operation, I entered the pre-op stage for a high risk geriatric patient before deciding on which surgeon and at which location I would be served best.

I had to be satisfied.

They were both exhaustive and time-consuming series of tests to which I had to be transported for: blood work, X-rays, cognitive assessment, hypertensive analysis, lung capacity, EKG, and stress evaluation. I had some results that meant it would take more time for me to qualify for the surgery.

The surgeon had to be satisfied.

After settling on the surgeon, I underwent one of two operations as I had reported to the court. Upon release, I was admitted to a hospital fitness center for immediate attention, followed by home-health nursing and physical therapy.

I remain poised for the second surgery.

I emphatically say to the court that my actions do not rise to the level of ordering sanctions against me.

## I HAD TO RETURN TO FLORIDA PREMATURELY

I did not complete my rehabilitation. I was advised of my only sister's grave illness.

My service providers organized aids for me to walk so that I could return to Florida to visit with her.

My sister died while I was in flight. Even though I was aware of her plight, I was distraught with grief.

With the support of family and a community of friends, I made it through her wake and funeral.

On the eve of her interment, her husband of over 70 years died.

With the loss of my son and these two loved ones, my small immediate family was reduced by a high percentage.

I continue to go through the various stages of grief.

I received personal service related to this matter. I have responded.

I feel that plaintiff is unnecessarily attacking and maligning me.

I emphatically say to the court that my actions do not rise to the level of ordering sanctions against me.

## TRANSAMERICA LIFE INSURANCE BENEFITS ARE OUTSIDE OF ESTATE

Plaintiff attached copies of checks from Maxine Novak, my son's paramour and corporate partner, to show the court evidence of my financial ability to open probate of my son's estate. **Exhibit D,** SunTrust Account Statement, p. 6 on 6.

I say to the court, therefore, that plaintiff also knows from Novak that the:

> TransAmerica Life Insurance benefits were paid directly to Shadow Ridge Properties, LLC, a Florida corporation;
>
> Shadow Ridge Properties, LLC is a Florida corporation that was owned by Novak and my son;
>
> TransAmerica Life Insurance policy, on the life of my son, was owned by Shadow Ridge Properties, LLC;

TransAmerica Life Insurance benefits for that policy were paid to Shadow Ridge Properties, LLC. Novak, ShadowRidge Properties, LLC co-owner, wrote the checks to Novak and to Granderson, as an agent of the corporation. I had no responsibility to carry out business transactions or write checks for Shadow Ridge Properties, LLC. I did neither. **Exhibit E,** SunTrust Account Statement, p. 6 of 6.

## PLAINTIFF MISREPRESENTED THE TRUTH TO THE COURT

Even though plaintiff showed checks from Shadow Ridge Properties, LLC, signed by Novak to me, he tells the court that *"Mrs. Granderson simply paid herself out with those proceeds..."* Plaintiff's communication with Novak should have revealed that:

Novak, a corporate officer of Shadow Ridge Properties, LLC, disbursed benefits from TransAmerica Life Insurance Company that were sent directly to Shadow Ridge Properties, LLC.

Although referenced in the will, the policy was not owned by my son; it could not be part of his inventory.

Plaintiff presented no proof that I altered any checks that were sent to me. I was a passive recipient.

Without sufficient comprehension of the actions of Novak--who wrote the checks to Lillian B. Granderson, not to the estate of Jack E. Robinson III, or with total disregard for that truth, plaintiff viciously said that I *"took the assets (insurance proceeds) and claimed that the estate was insolvent."* **Exhibit F,** Status Report and Sanctions Recommendation, p. 3. May 8, 2020.

I say to the court that I had no knowledge of the operations of Shadow Ridge Properties LLC. I found no need to modify or adjust any document, check, or action. Plaintiff's claim was intended to make me look like a thief and a scoundrel.

As a corporate officer of Shadow Ridge Properties, LLC, Novak efficiently transacted all of the business between Shadow Ridge Properties, LLC and TransAmerica Life Insurance.

I was distressed about the death of my only child. Asset researchers informed me that there are no assets. My son's estate is insolvent.

I protest the deception to the court to make me look crooked and dishonest. I ask this court to sanction plaintiff for intentionally painting me as a thief.

I emphatically say to the court that my actions do not rise to the level of ordering sanctions against me.

## PRUDENTIAL LIFE INSURANCE BENEFITS ARE OUTSIDE THE ESTATE

This is what I have been able to piece together about the insurance proceeds paid directly to me:

**2007**   My son purchased a Prudential Life Insurance Policy. "Mother" is beneficiary. He lists this in his will. I told plaintiff about the will. I was not trying to hide anything. **Exhibit G,** Last Will and Testament of Jack E. Robinson, page 11.

I maintain that the following is NOT sufficient proof of money, stolen by my son, and that he used the money to purchase life insurance policies.

*"Upon reviewing the will, it became clear that Mr. Robinson had purchased multiple life insurance policies contemporaneously with his receipt of stolen money, and had listed either Mrs. Granderson or Shadow Ridge Properties, a company of which he was the half-owner, as the beneficiary."* **Exhibit H** Plaintiff Universitas Education, LLC's Opposition to Motion to Quash or Continue, p. 2, May 21, 2020. (I added emphasis).

Plaintiff's mere accusations of theft by my son, and an empty claim that he used the stolen money to purchase multiple life insurance policies must fall short of sufficient proof to force me to be badgered to testify about my life insurance benefits, which are outside of the scope of probate.

Plaintiff told the Massachusetts court, "At the time that the money was stolen and money transferred to Mr.Robinson, he acquired about$3 million in additional life insurance policies..."

**2009**   I do know that the $30 million payout of Seth Spencer's life (2009) was made two years after my son purchased one of the policies (2007) for which I was named beneficiary.

I fail to see the basis or foundation for infringement of my right to privacy.

I ask the court, what proof did plaintiff present to the court that shows the connection between my son's 2007 life insurane purchase and the 2009 payment on Seth Spencer's death?  Please make plaintiff prove his allegations before forcing me to submit to unnecessary badgering.

**2017**   My son died in November.

**2018**   As his legitimate beneficiary, I received death benefits directly. My understanding is that where a beneficiary is named by a person who dies, those funds are exempt from probate in the Florida courts.

I protest the fact that plaintiff feels entitled to make charges and have them believed, without verification. I ask this court to demand  proof—not a mere suggestion or off-hand accusation—of evidence that my son stole money from plaintiff and used it to pay the Prudential premiums at issue here.

**WHEREFORE**, I ask this court to:

Dismiss this case for lack of jurisdiction;

Deny the sanctions sought against me;

Allow me 90 days to reply to the motion for sanctions;

Grant me time to be examined by my doctor for a medical release;

Permit me opportunity to engage the services of an attorney, who must become knowledgeable of the issues currently before this court.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _1st_ day of ~~May~~ June, 2020, e-service court notice was served on relevant parties.

_____
Lillian B. Granderson, *Pro Se*
Non-Party Witness