# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION TO DISMISS THIS CASE FOR LACK OF JURISDICTION PURSUANT TO RULE 12(h)(3)

## PRELIMINARY STATEMENT

Rule 12(h)(3) is very clear, once this Court discovers that it lacks jurisdiction, it must dismiss the case. Even though the Petitioner here is a "Nonparty" – beginning on Page 2 of the Universitas Motion for Summary Judgment Mr. Carpenter is unnecessarily libeled and defamed. In 2,000 pages of Exhibits, Mrs. Granderson – Jack Robinson's Mother – is not even mentioned once. Ironically, using Mrs. Granderson as a "stand-in" for Mr. Robinson does not provide necessary Article III Standing, which is clearly lacking in this case, but it does destroy diversity for jurisdiction purposes as Mrs. Granderson is a long time Florida Resident, as is Sharon Siebert who has been signing her Affidavits from Florida since 2011 including her September 2019 Affidavit where she admits that they knew all about the Amendment to the Charter Oak Trust Welfare Benefit Plan Section 6.01 in January 2007, which totally negates half of Attorney Manson's nonsensical, misleading, repetitive, and scandalous Motion.

Moreover, since the Charter Oak Trust was an ERISA Plan, all of the claims made by Attorney Manson are preempted, not just the ridiculous state law claims. But Attorney Manson is trying to do what Justice Thomas said in *Peacock v. Thomas*

1

could never be done, which is to hold some innocent person liable for someone else's claim. In fact, the only reason this Court is being bothered is because Judge Swain ruled against Attorney Manson trying to sue innocent people in New York by citing *Peacock v. Thomas*. *See* Exhibit One for Judge Swain's decision in 2020.

Similarly, when Universitas sued TD Bank in 2015, Judge Scheindlin gave a detailed examination of all possible claims including RICO, and concluded that any suit by Universitas against anyone after October of 2012 was time-barred because of the Wayne Bursey/Jack Robinson denial of the fraudulent Universitas claim in October of 2009. *See* Judge Scheindlin's Analysis attached as Exhibit Two.

The Universitas filings in this case are a pack of lies, but they do not establish that the Defendant, Lillian Granderson, Jack Robinson's 97-year-old mother, did anything to personally harm Universitas "concretely" in the amount of $75,000 which is what is required to establish Article III Standing. Because Universitas lacks standing this Court lacks jurisdiction and must dismiss this case pursuant to Rule 12(h)(3).

Perhaps more importantly for purposes of jurisdiction, Mr. Manson has repeatedly deceived this Court by claiming that Sharon Siebert is a resident of New York – whereas a recent "Truth Finder" Report (*See* Exhibit Three attached) as to her voting records show that she left New York in 2011 to take up residence in her mother's home in West Palm Beach, Florida, where she has actually signed

documents for presentation to this Court. Your Honor should ask to see her last three years of tax returns, and if they were not filed in New York then Your Honor should sanction Ms. Siebert as well as Attorney Manson for deceiving this Court. In any event, there is no reason to have a lengthy back-and-forth over Summary Judgment as this Court must dismiss this case pursuant to Rule 12(h)(3).

But if lack of Article III Standing and Lack of Diversity among the parties was not bad enough, the Sash Spencer insurance proceeds were not stolen but rather the fraud created by Sharon Siebert and Donna Vassar was exposed and their claim was denied by Jack Robinson and Wayne Bursey in October of 2009, who were the Attorney and the Trustee, respectively, of the Charter Oak Trust which was a welfare benefit plan covered by ERISA. The pre-emption clause of ERISA is known for its breadth – as no claim by Attorney Manson against Ms. Granderson can survive ERISA's pre-emption clause.

It is bad enough that Attorney Manson sued Mr. Carpenter's innocent Wife, Daughter, and Sister along with other innocent parties in Connecticut – all of whom won convincingly in front of the Second Circuit in April of this year on *res judicata* grounds – but suing Jack Robinson's 97-year-old mother is beyond the pale and this Court should use its inherent powers to sanction Attorney Manson and Sharon Siebert for deceiving the Court and wasting scarce judicial resources.

Perhaps the best description of ERISA's protection for innocent parties like Ms. Granderson is by Justice Thomas in *Peacock v. Thomas*, citing the Supreme Court's decision in *H.C. Cook Co. v. Beecher* a century ago:

> We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, (1910). In *Beecher,* the plaintiff obtained a judgment in federal court against a corporation that had infringed its patent. When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation, alleging that, during the pendency of the original suit, they had authorized continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. We agreed with the Circuit Court's characterization of the suit as "an attempt to make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." *Id.,* at 498–499, 30 S.Ct., at 602. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment.

*Peacock v. Thomas*, 516 U.S. 349, 357–58, (1996).

Therefore, to save this Court's valuable time, Petitioner Carpenter respectfully asks this Court to immediately dismiss this case based on Rule 12(h)(3), as it must do under the law of the First Circuit and the Supreme Court.

# I.    LEGAL STANDARD

This case must be dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.")

A court may decide the jurisdictional issue under Rule 12(h)(3). That rule provides: "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (collecting cases). Thus, the Court should consider Petitioner's motion under Rule 12(h)(3).

Petitioner contends that Plaintiffs lack standing to advance their claims. "[A] federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203, (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103, (2019)). A plaintiff carries the jurisdictional burden, *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003).

If a plaintiff "lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) (citing *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

"Before turning to the parties' arguments, we briefly rehearse the law on standing. Federal courts are courts of limited jurisdiction that may entertain only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. For there to be a case or controversy under Article III, the [petitioner] must have a 'personal stake' in the case — in other words, standing." *TransUnion*, 141 S. Ct. at 2203 (quoting *Raines v. Byrd*, 521 U.S. 811, 819, "As the party invoking federal jurisdiction, the [plaintiff] bear[s] the burden of demonstrating that [it has] standing." Id. at 2207-08 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992)). The plaintiff "must show (i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the [defendant]; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan*, 504 U.S. at 560-61,).

To establish standing, a plaintiff must have "(1) suffered an injury in fact, **(2) that is fairly traceable to the challenged conduct of the defendant**, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), "Injury in fact" means an

"'invasion of a legally protected interest'" that is both "'concrete and particularized'" as well as "'actual or imminent,'" rather than "'conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way,'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130), with a plaintiff possessing "'a personal stake' in the case." *TransUnion*, 141 S.Ct. at 2203 (quoting *Raines v. Byrd*, 521 U.S. 811, 819, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)), "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)). "'Concrete' is not, however, necessarily synonymous with 'tangible,'" *Spokeo*, 136 S. Ct. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (free exercise)).

In order to satisfy the traceability (causation) and redressability requirements, a petitioner must **"allege personal injury [that is] fairly traceable to the [defendant]'s allegedly unlawful conduct and likely to be redressed by the requested relief."** *California v. Texas*, 141 S. Ct. 2104, 2113, (2021) (quoting *DaimlerChrysler Corp.* v. *Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). "If the plaintiff fails to show any of these three elements, we cannot

review the proffered matter on its merits." *See Katz v. Pershing, LLC*, 672 F.3d 64, 75-76 (1st Cir. 2012).

Concreteness and particularization are independent and necessary prerequisites of the injury in fact requirement. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 334, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). To be concrete, "the asserted harm [must have] a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts — such as physical harm, monetary harm, or various intangible harms including ... reputational harm." *TransUnion*, 141 S. Ct. at 2200 (quoting Spokeo, 578 U.S. at 340-41, 136 S.Ct. 1540). To be particularized, the harm "must go beyond a generalized grievance [ ] to manifestly affect the [petitioner] in a personal and individual way." Lyman v. Baker, 954 F.3d 351, 361 (1st Cir. 2020) (first alteration in original) (internal quotations omitted); see Save Our Heritage, Inc. v. F.A.A., 269 F.3d 49, 55 (1st Cir. 2001) (explaining that, in order to satisfy the injury in fact requirement, "the petitioner [must be] someone who has suffered or is threatened by injury in fact to a cognizable interest").

## II.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR LACK OF FEDERAL JURISDICTION

Before it can do anything else, a federal court must determine that it has subject matter jurisdiction to hear a case.   Federal courts are courts of limited jurisdiction, and it is incumbent upon the Court to determine if a federal question exists, and if the Court has personal jurisdiction over the Parties. The federal courts have consistently been held to the principle that once jurisdiction is challenged, the District Court has **no authority to do anything** but to take action on the motion to determine whether or not it has jurisdiction to proceed.   As the Supreme Court held in *The State of Rhode Island v. The State of Massachusetts*, 37 U.S. 657 (1838), the Court is powerless to consider a claim over which it lacks subject-matter jurisdiction. Arguments about the parties' purported motives are irrelevant. Id. at 714. Once the question of jurisdiction is raised "it must be *considered* and *decided before the court can move one step further*" (emphasis added) Id. at 718.   "Jurisdiction *cannot be assumed* by a district court nor conferred by agreement of parties, but it is incumbent upon [the Plaintiff] to allege in clear terms, the necessary facts showing jurisdiction which must be proved by convincing evidence." *Harris v. American Legion*, 162 F. Supp. 700 (1958) (emphasis added), *see also McNutt v. General Motors Acceptance*, 298 U.S. 178 (1936).

It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824). This time-of-filing rule is hornbook law (quite literally according to Justice Scalia) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing— whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. "Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." See *Capron v. Van Noorden*, 2 Cranch 126 (1804).

The Supreme Court has adhered to the time-of-filing rule regardless of the costs it imposes. For example, in *Anderson v. Watt*, 138 U.S. 694 (1891), two executors of an estate, claiming to be New York citizens, had brought a diversity-based suit in federal court against defendants alleged to be Florida citizens. When it later developed that two of the defendants were New York citizens, the plaintiffs sought to save jurisdiction by revoking the letters testamentary for one executor and alleging that the remaining executor was in fact a British citizen. The Court rejected this attempted post-filing salvage operation, because at the time of filing the executors included a New Yorker. Id., at 708. It dismissed the case for want of jurisdiction, even though the case had been filed about 5 ½ years earlier, the trial

court had entered a decree ordering land to be sold 4 years earlier, the sale had been made, exceptions had been filed and overruled, and the case had come to the Court on appeal from the order confirming the land sale. Id., at 698. Writing for the Court, Chief Justice Fuller adhered to the principle set forth in *Conolly v. Taylor*, 2 Pet. 556, 565 (1829), that "jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." "[J]urisdiction," he reasoned, "could no more be given ... by the amendment than if a citizen of Florida had sued another in that court and subsequently sought to give it jurisdiction by removing from the State." 138 U.S. at 708.

**Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).** Objection to a federal court's subject matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (holding that the nature and limits of federal judicial power require the court to raise the issue of subject-matter jurisdiction sua sponte). **Whenever the court**

**lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action**.

"The party seeking the exercise of jurisdiction bears the burden of establishing jurisdiction and must allege in his pleading the facts essential to show jurisdiction." In determining whether a party adequately has presented facts sufficient to establish jurisdiction, the court should look to the complaint's face.

### III.   THIS CASE MUST BE DISMISSED FOR LACK OF JURISDICTION BECAUSE UNIVERSITAS LACKED ARTICLE III STANDING

Standing is a prerequisite to a federal court's subject matter jurisdiction, the absence of standing may be raised at any stage of a case. *See P.R. Tel. Co. v. T–Mobile P.R. LLC,* 678 F.3d 49, 57 (1st Cir.2012).

*Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).

Significantly, as the First Circuit has stated several times in different cases, Universitas bears the burden of proving that it has Article III standing and without that necessary standing this Court must dismiss the case pursuant to Rule 12(h)(3):

> "[P]laintiffs bear the burden of demonstrating that they have standing," *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2207, (2021), and must do so "with the manner and degree of evidence required at the successive stages of the litigation," *id.* at 2208 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561, (1992)). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* "To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas,* 143 S.Ct. 1964, 1966, (U.S. June 23, 2023).

*Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365, 371–72 (1st Cir. 2023).

Universitas has had several years to check off the three required boxes of *Lujan* but chose not to do so, and instead resumed its ranting and raving that its money was stolen rather than the truth that an ERISA Plan denied the claim for several reasons in 2009. Mr. Manson is clearly on a frolic of his own and trying to extort money from innocent parties in violation of the Supreme Court's prohibition

in *Peacock v. Thomas* where the Supreme Court stated that the Court has never allowed a Plaintiff to harass and collect money from an uninvolved innocent party. Never – based on *H.C. Cook v. Beecher* which was a Connecticut case from a century ago. There is also no disputing that the Charter Oak Trust Welfare Benefit Plan was a Connecticut Plan covered by ERISA – and the Universitas filing in December of 2012 in the New York Arbitration mentions ERISA 44 times without a single reference to "Mr. Carpenter." So, these wild "alter ego" claims in Massachusetts against innocent parties have no basis in fact and are prohibited by law, the doctrine of *res judicata*, and the Statute of Limitations.

Yet Attorney Manson continues to misrepresent the holdings in different cases concerning Universitas and different parties, but does not provide any basis for satisfying all three elements of the *Lujan* standard as he is required to do if he wants to continue this frolic in Massachusetts. Universitas cannot show $75,000 in damages caused by Ms. Granderson in this case – and after the exhaustive discovery in this case of over 7 years – that is truly saying something. But Universitas has the burden to allege and prove all three *Lujan* factors to satisfy Article III Standing, and yet it has not even tried to satisfy even one of the three requirements of *Lujan* much less the critical one that some action by the Ms. Granderson **caused** $75,000 in damages to the Plaintiff. Because Universitas lacks Article III Standing, this Court has no choice but to dismiss this case now pursuant to Rule 12(h)(3).

Universitas lost big in Connecticut suing innocent parties, and another recent Second Circuit case (December 2022) confirms that Universitas cannot use "veil-piercing" or "alter-ego" claims to avoid the preclusive effects of ERISA and *Peacock v. Thomas*:

> "Plaintiffs-Appellants' alternative claim of veil-piercing liability is similarly without merit. A veil-piercing claim "is a means of imposing liability on an underlying cause of action," *Peacock v. Thomas*, 516 U.S. 349, 354 (1996), and cannot stand as an independent claim. Here, Plaintiffs-Appellants claim that Sirotkin "left [Hospitality] undercapitalized with insufficient resources to pay employees." But they do not further assert that their claims under the FLSA and NYLL stemmed from the hotel's financial difficulties. Therefore, Plaintiffs-Appellants' alter ego liability claim is independent of their claims under the FLSA and NYLL and fails for that reason."

*Ocampo v. Brown & Appel, LLC*, No. 21-2579-CV, 2022 WL 17684587, at *2 (2d Cir. Dec. 15, 2022) (holding the veil-piercing claim was "without merit").

Respectfully, this Court is obligated to dismiss this frivolous and vexatious frolic against Ms. Granderson as a matter of law. Universitas lacks Article III Standing, so this Court is obligated to dismiss the case now as a matter of law. The correct solution is to dismiss all claims <u>without</u> prejudice, and let Mr. Manson bring a new cause of action against the ERISA Plan in Connecticut where Mr. Manson has consistently lost.

"Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins.*

*Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (quotation marks omitted). "This limitation is 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Id.* (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "The doctrine of standing gives meaning to these constitutional limits by 'identifying those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised sua sponte." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct of the defendant complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 157–58 (*quoting Lujan*, 504 U.S. at 560–61). "Under the injury-in-fact requirement, 'the first and foremost' element, 'a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)). As to the second element, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (*quoting Lujan*, 504 U.S. at 560) (alterations, ellipses, and emphasis omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (*quoting Lujan*, 504 U.S. at 561).

The party invoking federal jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). As part of this burden, plaintiffs must establish that they have standing to sue. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014). When assessing subject-matter jurisdiction, courts "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (discussing the resolution of a Rule 12(b)(1) motion to dismiss); *see Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (reviewing additional submissions, including affidavits, while analyzing subject-matter jurisdiction under Rule 12(h)(3)). To establish Article III standing, a plaintiff must show (1) that he suffered an injury-in-fact, (2) that is causally connected to the challenged conduct of the defendant, and (3) that is likely to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). A plaintiff's injury-in-fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Id.*

at 560. "The district court did not err in dismissing Martin's complaint for lack of subject-matter jurisdiction. Rule 12(h)(3) requires a district court to dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3)". *Martin v. United Bridge Cap.*, LP, No. 21-1790-CV, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022).

Additionally, as the Second Circuit made clear in *U.S. v. Prado*, which was a criminal case, a claim to the Plaintiff's lack of Article III Standing and the Court's lack of jurisdiction can be raised at any time pursuant to Rule 12(h)(3): "Although defendants did not make this contention until these appeals, they rely on the proposition that an "objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, (2006). "Rule 12(h)(3) [Fed R. Crim. P.] instructs: 'Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Id. United States v. Prado*, 933 F.3d 121, 132 (2d Cir. 2019).

Federal courts are courts of limited jurisdiction. Therefore, this Court must assure itself that it has subject matter jurisdiction as a threshold matter before proceeding to the merits of any case. *See e.g., Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). "A case is properly dismissed for lack of subject matter

jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). *Ollie v. Univ. of Connecticut*, 364 F. Supp. 3d 143, 147–48 (D. Conn. 2019).

Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the Federal Courts to "Cases" and "Controversies." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). The standing doctrine, which emerges from Article III, is designed "to ensure that Federal Courts do not exceed their authority as it has been traditionally understood." *See*, Spokeo, *Inc. v. Robins*, 578 U.S. 330, 338, (2016). A plaintiff has Article III standing where the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. Therefore, in a class action, federal courts lack jurisdiction if no named plaintiff has standing. *Frank v. Gaos,*, 139 S. Ct. 1041, 1046,  (2019). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements, "which must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of litigation." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).

Because "standing is necessary to our jurisdiction," a federal court is required to determine standing at the outset. *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). The "irreducible constitutional minimum" of standing in federal court requires: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589-90, (1992). These issues and elements have not been discussed in this case, much less proven. To support standing, an injury must be both "concrete and particularized."

When a party raises a challenge to subject matter jurisdiction based on the allegations in the complaint, as Petitioner has done in this case, the Court must ordinarily decide the issue based solely on the allegations in the complaint and the exhibits attached thereto. *Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016).

Respectfully, it is Hornbook Law that if the Plaintiff Universitas lacks Article III Standing, then this Court lacks subject matter jurisdiction and this Court has no option but to dismiss the case before it does anything else. The requirement that a plaintiff demonstrate constitutional standing is a jurisdictional prerequisite to suit in federal court. Thus, if Plaintiffs lack standing under Article III of the U.S.

20

Constitution, there is no subject matter jurisdiction and the Court must dismiss this case. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir.2004) ("If [plaintiff] lacks standing, we lack subject matter jurisdiction to entertain a request for such relief."); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

> Without jurisdiction a court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to a court is of announcing the fact and dismissing the case.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, (1998).

> "Federal courts must determine that they have jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*Lance v. Coffman*, 549 U.S. 437, 439, 127 S. Ct. 1194, 1196–97, 167 L. Ed. 2d 29 (2007).

A district court *sua sponte* "must first resolve the subject matter jurisdictional issue on which the Plaintiff's Article III standing depends before awarding either side a judgment that is, in essence, a judgment on the merits." *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 83 (2d Cir.

2006). The plaintiff has the burden of establishing standing under Article III. *Aurecchione v. Schoolman Transp. Systems, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. The concept of standing is part of this limitation." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 37 (1976) (cit. omitted); *see, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992) ("*Lujan*"); *Allen v. Wright*, 468 U.S. 737, 750–51; *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975).

> "[T]he irreducible constitutional minimum of standing contains three elements. First and foremost, the plaintiff must have suffered an "injury in fact"— a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation -- a fairly traceable connection between the plaintiff's injury and the complained of conduct of the defendant. And third, there must be redressability -- a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and [***233] redressability 5Link to the text of the note comprises the core of Article III's case-or-controversy [*104] requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–04 (1998) (cit. omitted).

[Universitas] has failed to show Article III standing, i.e., failed to show that their injuries were fairly traceable to the Defendant's acts. *Rothstein v. UBS AG*, 708 F.3d 82, 90–91 (2d Cir. 2013).

There is also no disputing that the Connecticut-based Charter Oak Trust Welfare Benefit Plan was a Plan covered by ERISA – therefore, Ms. Granderson has not harmed Universitas in any way, shape, or form, and any action in this case is both time-barred and barred by the expansive scope of ERISA as well as *res judicata*.

## IV.   THIS COURT LACKS JURISDICTION BECAUSE ALL OF THE PARTIES ARE NOT DIVERSE

Federal courts only have subject-matter jurisdiction over cases in which the amount in controversy exceeds $75,000 and where the parties are "citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity must be complete— "the presence of but one nondiverse party divests the district court of original jurisdiction over the entire action." *In re Olympic Mills Corp.*, 477 F.3d 1, 6 (1st Cir. 2007) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267, 435 (1806)). "For purposes of diversity, a person is a citizen of the state in which he is domiciled." *Padilla–Mangual*, 516 F.3d at 31. "A person's domicile 'is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning'" *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (quoting 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3612, at 526 (2d ed. 1984)). Proving domicile requires two showings: (1) "physical presence in a place," and (2) "the intent to make that place

23

one's home." "Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." *García Pérez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004). There are a variety of factors that are relevant to determining a party's domicile: "current residence; voting registration and voting practices; location of personal and real property; bank accounts; place of employment or business; driver's license and other automobile registration; [and] payment of taxes." *Id.* at 351 (quoting *47 Wright, *supra*, § 3612). "No single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." *Id.*

*Aponte–Dávila v. Municipality of Caguas*, 828 F.3d 40, 46–47 (1st Cir. 2016).

As can be clearly seen from the TruthFinder Reports (*See* Exhibit Three), not only has Sharon Siebert been a Florida resident since 2011, Donna Vassar and even Universitas LLC have Florida addresses listed. Petitioner will leave it to the Court to deal with Attorney Manson's lack of candor with the Court, but this Court clearly lacks jurisdiction because the parties are not diverse and Mrs. Granderson did not cause $75,000 in damages – nor did her son, Jack Robinson.

## V.  OTHER REASONS THIS COURT SHOULD DISMISS THE CASE

As this Court is aware, Universitas sued TD Bank in 2015, and Judge Scheindlin examined every possible claim and concluded that because Universitas knew it was not getting paid by the Charter Oak Trust by October 2009 – Judge Scheindlin's opinion stated that any claim by Universitas against any party after October 2012 was time-barred. See Judge Scheindlin's December 2015 Opinion attached as Exhibit Two. The Turnover Judgment Claim was not brought and decided until November 2014 and despite the clear reading of *H.C. Cook v. Beecher* quoting *Peacock v. Thomas*:

> We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person notalready liable for that judgment. Indeed, we rejected an attempt to do soin *H.C. Cook Co. v. Beecher*, 217 U.S. 497, (1910). *Peacock v. Thomas*, 516 U.S. 349, 357, (1996).

Universitas has been trying to collect from innocent parties other than the Charter Oak Trust despite the fact that both ERISA and the Supreme Court state that one cannot sue any entity but the Plan, and if the Plan runs out of money, you cannot sue other parties like the President of the Company or the Bank that held the Plan assets or in this case the mother of the attorney that represented the Plan. The Charter Oak Trust clearly states that it is a Death Benefit Only Welfare Benefit Plan which is clearly an ERISA Plan. See Judge Vanessa Bryant's

25

analysis in *Wilmington Savings (Christiana Bank) v. Universitas*:

> This rule applies even where, as here, the underlying claims
> possibly implicate a federal court's exclusive jurisdiction. *Cf.
> Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1255 (9 th
> Cir.1989) (remanding action removed on the basis of ERISA
> preemption because action was removed after the 30-day limitation
> period). The court uses the word "possibly" for the following
> reasons. Federal district courts have jurisdiction over arbitrability
> disputes if the well-pleaded arbitration demand raises a federal
> claim. See *Vaden v. Discover Bank*, 556 U.S. 49, 62, 129 S.Ct. 1262,
> 173 L.Ed.2d 206 (2009). The arbitration demand here alleges
> common law causes of action, but ERISA preempts any state law
> claims that "relate to any employee benefit plan". 29 U.S.C. §
> 1144(a). A claim relates to an employee benefit if the claim
> "purports to provide a remedy for the violation of a right expressly
> guaranteed by [ERISA]." *Ingersoll-Rand Co. v. McClendon*, 498
> U.S. 133, 142,111 S.Ct. 478, 112 L.Ed.2d 474 (1990). ERISA
> expressly provides a plan beneficiary with a right to bring a claim
> for breach of fiduciary against a plan fiduciary. 29 U.S.C. §
> 1132(a)(2). From the face of the arbitration demand, it appears that
> COT, a MEWA, is an employee benefit plan, that Universitas is a
> plan beneficiary, and that Wilmington is a plan fiduciary. The Court,
> however, declines to answer these questions and instead proceeds
> with its discussion on diversity jurisdiction.

*Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp.
3d 273, 283 (D.Conn. 2016).

ERISA's preemption clause is "conspicuous for its breadth." *FMC Corp. v.
Holliday*, 498 U.S. 52, 58 (1990). ERISA's preemption provision is sweeping,
providing that ERISA "shall supersede any and all State laws insofar as they may
now or hereafter relate to any employee benefit plan described in Section 1003(a) of
this title and not exempt under Section 1003(b) of this title". 29 U.S.C. § 1144(a). "As

to the state common law claims, ERISA preempts those that see to "rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA". *Paneccasio v. Unisource Worldwide Inc.*, 32 F.3d 101, 114 (2d Cir. 2008), quoting *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 214 (2004).

Although Universitas cited the ERISA statute and cases decided under ERISA throughout its prehearing brief in the arbitration of 2010 and before Judge Swain in 2012, it failed in Boston to acknowledge that ERISA limits Universitas to a single claim for benefits under ERISA and fully preempts all of Universitas' common law claims. ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B); *Bd of Trustees of the Local 295/Local 851-IBT Employer Group Pension Fund v. Callan Assoc., Inc.*, 175 F.3d 1007(2d Cir. 1999) (claims for breach of contract and breach of fiduciary duty are preempted by ERISA); *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (conversion claim is preempted by ERISA); *Saks v. Franklin Covey Co.*, 117 F. Supp. 2d (S.D.N.Y.2000) ("Thus, it has long been held that a plaintiff has no claim for breach of contract against a plan administrator for failing to award benefits, because such claims are squarely preempted by ERISA."); *Nealy v. U.S. Healthcare HMO*, 844 Supp. 966, 970, 971 (S.D.N.Y. 1994) (in enacting ERISA, Congress' intent was to "ensure that plans and plan sponsors would be subject to a uniform body of law" and thus minimize the "burdens of complying

with conflicting directives among States or between States and the Federal Government" and "as part of ERISA's enforcement scheme, most state laws relating to employee benefit plans are preempted"). "As a result, all of Universitas's lengthy arguments regarding the respondents' alleged fiduciary duties, breaches thereof, and Universitas's conversion claim are preempted and must fail as a matter of law."

Despite Universitas's best efforts to obfuscate the undisputed facts of this case, defame uninvolved parties, and to expand these proceedings beyond the scope of ERISA Welfare Benefit Plan and the examination of whether or not Universitas is entitled to benefits under the Plan, as detailed below there is no question that Universitas is not entitled to any benefits under the Plan.

As this Court is aware, Judge Scheindlin held in 2015 that Universitas's claims against another third-party, TD Bank, N.A., were barred by multiple statutes of limitations. *Universitas Education, LLC v. TD Bank, N.A., 15-cv-5643 (SAS), 2015 U.S. Dist. LEXIS 170264, 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015)* (filed in this case at Dkt. 17, Exh 2). Because Petitioner cannot do a better job than Judge Scheindlin of explaining the various statute of limitations violations by Universitas in this case, Petitioner defers to Judge Scheindlin's decision. See Exhibit Two attached.

As for the three-year ERISA statute of limitations issue, the Charter Oak

Trust was the subject of a DOL raid in May of 2011, whereby the DOL stated that it had jurisdiction because the Charter Oak Trust Welfare Benefits Plan was in fact an ERISA plan and thus subject to ERISA's requirements. Universitas's arguments to the contrary are clearly unavailing as the unlawful DOL Raid of May 26, 2011 is currently subject to the Government's third appeal of Judge Underhill's ruling in Mr. Carpenter's favor at the Second Circuit. As Judge Scheindlin points out, the period for the statute of limitations began in October of 2009 and ended in October of 2012. The facts are clear: The Charter Oak Trust was a MEWA governed by ERISA, and ERISA bars all of Universitas' claims against anyone and everyone now and at any time after October 2012.

## CONCLUSION

For the reasons stated above, this Court lacks jurisdiction because the Parties are not diverse and Universitas lacks Article III Standing, so this case must be dismissed forthwith, pursuant to Rule 12(h)(3).

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT. 06092
860-573-7770
dcarpentermail@gmail.com

## CERTIFICATION

Petitioner Daniel E. Carpenter certifies that he sent a copy of this Motion to the Clerk of the Court, and to Attorneys for Universitas on September 4, 2024.

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT. 06092
860-573-7770
dcarpentermail@gmail.com