## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION TO STRIKE THE UNIVERSITAS MOTION FOR SUMMARY JUDGEMENT PURSUANT TO RULE 12(f)

### PRELIMINARY STATEMENT

As Your Honor knows better than anyone, Petitioner-Carpenter is the only American in the Nation's history to be convicted by the First Circuit rather than a jury of his peers. The Supreme Court recently traced back the Vicinage Clause and the right to be tried by a jury drawn from where the Defendant allegedly committed the crime to the Magna Carta (See *Smith v. United States*, 143 S. Ct. 1594, 1604–06, (2023)). Additionally, after the First Circuit's recent decision in the "Varsity Blues" case of *Abdelaziz* and the Supreme Court's decisions in *Ciminelli*, *Percoco*, and *Binday*, it is now clear that not only did Petitioner not do the acts that he was accused of – now what he was accused of is no longer a Federal Crime. Therefore, not only is the entire Manson-Universitas Brief sanctionable, it should be stricken for being both "redundant" and "impertinent" as well as "scandalous" pursuant to Rule 12(f), and is now defamatory and libel *per se*.

Petitioner will be forever grateful to this Court for its detailed description of Petitioner's quarter-century of injustice and the injury to his family and friends – especially his Wife and Daughter whom Attorney Manson has been suing for the past four years in Connecticut until he was finally silenced by the Second Circuit in

April of this year. But 20 years ago, Professor Alan Dershowitz spoke before a packed courtroom (the crowd was there for Professor Dershowitz not Petitioner) to systematically explain to Judge O'Toole all of the "material" defects of the Carpenter Indictment – referring to it as "Kafkaesque" – and that it did not contain any reference to "*mens rea*" or "*scienter*" and didn't give proper "fair warning" as to what the Defendant did that was illegal as required by *Neder*. To cure these obvious defects in the Indictment, the Government merely added the word "material" to seven paragraphs in September of 2004. We now know that this "broadening" of the Indictment placed it past the five-year Statute of Limitations as described by the Supreme Court in *Kokesh* from 2017.

Suffice it to say, there are more than a dozen "major league" Constitutional violations in Petitioner's case. This Court articulated the Speedy Trial Clause violations in *United States v. Carpenter* better than anyone, and Justice Breyer explained the defects in both of Petitioner's Indictments in his writing for a 9-0 unanimous Supreme Court in *Ruan v. United States*, 142 S. Ct. 2370, 2377, (2022), "Scienter involves the degree of knowledge necessary to make a person criminally responsible for his or her acts", which is second only to Professor Dershowitz's lecture in front of Judge O'Toole 20 years ago in 2004.

The point is clear. Both jury verdicts from the trials of 2005 and 2008 were thrown out by Judge O'Toole in 2005 and 2011. Because the juries were disbanded,

Petitioner seems to be the "only" American that qualifies for 28 U.S.C. § 2241 relief pursuant to *Jones v. Hendrix*, and Petitioner has set the record for "post-conviction" relief in the First Circuit (if not nationally). As this Court is aware, Petitioner has yet one more appeal for justice currently in front of the First Circuit. As a reference point for Your Honor, two of the judges of *Abdelaziz*, Judge Lynch and Judge Lipez, wrote favorable opinions for Petitioner-Carpenter in 2007 affirming Judge O'Toole's new trial order of 2005.

Therefore, because of Your Honor's personal knowledge as to all of the Due Process violations in *United States v. Carpenter* and the egregious prosecutorial misconduct and the total miscarriage of justice in Petitioner's case, Petitioner respectfully asks the Court to strike the entire Manson-Universitas Brief and award sanctions to Petitioner in a six-figure amount pursuant to its inherent powers; so that Attorney Manson and Universitas will be dissuaded from defaming (and suing) innocent parties like Petitioner's Wife and Jack Robinson's Mother – Mrs. Lillian Granderson.

## I.   SOMETHING MORE ENERVATING THAN HELL

The Manson-Universitas Brief of 2024 does not discuss any legal issues, but rather "doubles-down" on the unlawful slander, defamation, and libel of the clearly time-barred brief of May 2015. Manson (who should not be allowed to continue as an attorney anywhere) seems to forget that Universitas lost in the Second Circuit in April 2015, and Petitioner-Carpenter's name is nowhere to be found in that detailed Opinion filed in the Second Circuit a month before Universitas began its unlawful trope of the "Carpenter Criminal Enterprise". Similarly, in December 2015, Judge Scheindlin wrote a detailed decision examining each and every possible claim that Universitas could make – including RICO – and determined that any action by Universitas against anyone for anything would be time-barred after October 2012. Just as the Statute of Limitations for RICO should have protected Jack Robinson – it should doubly protect his Mother, the 97-year-old Mrs. Granderson. The Manson-Universitas Brief does not explain how Mrs. Granderson could possibly be liable in 2024 for the denial of a benefit claim from an ERISA Plan in October of 2009 – even if her son was actually associated with a Mobster – as Mr. Carpenter is unfairly portrayed in the Manson Brief. Moreover, Attorney Manson does not explain why he has continuously lied to this Court about Sharon Siebert's actual domicile as well as Jack Robinson's, just to keep slandering the Carpenter family.

This is particularly significant, as the First Circuit in *United States v. Carpenter*, 781 F. 3d 599 (1st Cir. 2015), describes very well the "Living Hell" that Petitioner has suffered at the hands of the Government for the past 20 years, and as Your Honor pointed out in *El Nadaff*, an "apology" is just not good enough for a clear violation of the Constitution as happened over a dozen ways in Petitioner's case which is described by the First Circuit as a "Living Hell":

> **Carpenter's argument instead focuses on the anxiety he suffered throughout the proceedings. His brief, supported by record materials, describes a "living hell" of lost business opportunities, financial stress, sleeplessness, panic attacks, and the like.** He points, however, to no opportunities that would not have been lost as well in the wake of a speedier conviction. And while anxiety about the outcome of post-conviction motions and appeals is no doubt real, anxiety is a normal part of the pendency of criminal charges. It therefore becomes a sign of prejudice only when "undue pressures" exist. **While Carpenter argues convincingly that he has suffered great stress throughout the proceedings, he does not demonstrate why his anxiety was greater than that suffered by many other defendants, other than that it continued longer. While it may be possible that post-conviction delay could result in prejudice by shifting the time period in which a defendant serves his sentence, Carpenter makes no such argument here.** In sum, while the length of delay causes us to presume some prejudice, we find nothing in this record to establish that Carpenter suffered a type of prejudice that would take on added weight in our assessment of the constitutionality of that delay. While the travel of the case as a whole was remarkable, its length arose almost entirely because the district court exercised (and exceeded in one instance) its discretion in granting Carpenter relief from verdicts against him. In the end, we have an unjustified delay of roughly twenty-one months, which occurred after a guilty verdict was returned and without any meaningful fault of the government. **While the delay was unfortunate, it did not impair the defense, create any undue pressure, or result in any period of incarceration.** *United States v. Carpenter*, 781 F.3d 599, 614–15 (1st Cir. 2015).

At the risk of having anyone claim (as the First Circuit did several times) that Petitioner is once more simply "repackaging" again – Rocky Moore (a convicted killer) had his conviction vacated by the Supreme Court for a delay of only 28 months, which happens to be shorter than Petitioner's "Speedy Trial Delay" of 39 months from the June 2008 trial to September 2011 when Judge O'Toole threw out the jury verdict for egregious prosecutorial misconduct:

> "Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . **may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.**" *Moore* at 27, *citing United States v. Marion*, 404 U.S. 307, 320-21 (1971).

Once again, Petitioner respectfully suggests that he is the "One Innocent Person" out of 100 that Ben Franklin was warning us all to protect – and was a three-decade victim and perhaps even the "poster-child" of "Public Obloquy" because of the Manson-Universitas Brief and the First Circuit's "inaction" in Petitioner's case. As Your Honor pointed out in *El Nadaff*:

> Length of delay analysis requires a "double enquiry," **Doggett v. United States, 505 U.S. 647, 651-52, (1992), because it is both a "triggering mechanism for the rest of the [speedy trial] analysis, and *a* factor in that analysis," Handa, 892 F.3d at 101 (quoting United States v. Carpenter, 781 F.3d 599, 609 (1st Cir. 2015)).** To establish at the outset that a speedy trial inquiry is necessary, "a defendant must allege that the time between accusation — whether by arrest or indictment — and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Handa*, 892 F.3d at 101 quoting *United States v. Irizarry-Colón*, 848 F.3d 61, 68 (1st Cir. 2017)). **The First Circuit has held that a "[d]elay of around one year is considered presumptively prejudicial, and the presumption that delay**

**prejudices the defendant 'intensifies over time.'"** *Carpenter*, **781 F.3d at 610** (quoting *Doggett*, 505 U.S. at 652, 112 S. Ct. 2686). For *Barker* factor one purposes, the delay period is calculated using the date that the defendant is "indicted, arrested, or otherwise officially accused" as its start date. **It is inadequate to leave matters in this case with the observation that "the delay was unfortunate, [but] it did not impair the defense, create any undue pressure, or result in any period of incarceration." *Carpenter*, 781 F.3d at 615. The delay here did something more enervating; it deprived the defendant of his fundamental constitutional right to a speedy and public trial.** *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *24 (D. Mass. Mar. 16, 2023).

Your Honor goes on to make a number of points citing *U.S. v. Carpenter:*

Here, each of the four *Barker* factors in varying degrees weighs in favor of finding a violation of Mr. El Naddaf's Sixth Amendment right to a speedy trial. Together, they overcome the hurdles *Doggett* identified for a defendant to surmount in establishing a speedy trial claim. **It is inadequate to leave matters in this case with the observation that "the delay was unfortunate, [but] it did not impair the defense, create any undue pressure, or result in any period of incarceration." *Carpenter*, 781 F.3d at 615. The delay here did something more enervating; it deprived the defendant of his fundamental constitutional right to a speedy and public trial.**

Having conducted a full four factor *Barker* analysis as directed by *Doggett* and governing First Circuit law shaped by the Supreme Court's modern cautious, step-by-step and ad hoc approach to addressing constitutional speedy trial claims, I am not unaware of the tensions created by the interests at play. That constitutional protections are principally directed at securing for an accused the right to a speedy and public trial. That constitutional provision also serves to secure for the community a speedy and public resolution of criminal charges. **Yet the decision to move the case to trial deprives the defendant of the right to avoid trial altogether when his speedy trial rights have been breached.** In addressing the issues in this case, I was impelled by the conclusion that a meaningful balancing test here required such a trial. **With the benefit of the full record it created, I am satisfied that Mr. El Naddaf has been deprived of his constitutional speedy trial rights and that this deprivation provides an alternative ground for a judgment terminating this case.** *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *24 (D. Mass. Mar. 16, 2023).

In *Doggett* v. *United States*, the Supreme Court twice cited a law review article as instructive, H. Richard Uviller, Barker v. Wingo: *Speedy Trial Gets a Fast Shuffle*, 72 Colum. L. Rev. 1376 (1972). *See Doggett* v. *United States*, 505 U.S. 647, 652 n.1 & 658 n.4, 112 S. Ct. 2686, 120 L.Ed.2d 520 (1992). There, Professor Uviller explored, *inter alia*, the "[r]ealistic[ ]" application of prejudice in the *Barker* analysis, explaining that "prejudice lies beyond the capacity of either side to prove or disprove, except in the rare instance where a known defense witness of known competence actually disappears or reports a recent impairment of memory, and no prior testimony from him is available." Uviller, *supra*, at 1394-95. **As a result, "the shift of burden actually permits the presumption of prejudice to prevail on the issue," though "[t]he establishment of [presumptive] prejudice ... does not end the inquiry; it merely focuses attention on other elements wherein impropriety or justification may be more meaningfully discerned."** *Id.* **at 1395.**

Your Honor then describes Judge Lipez's famous Opinion in *Velazquez* for

the Third Circuit which Petitioner-Carpenter actually mentioned to the First Circuit

in 2014:

Judge Lipez, a First Circuit judge sitting by designation on the Third Circuit "note[d] that, in citing the ... [Uviller] passage for support, the *Doggett* Court was keenly aware of the practical difficulties for the prosecution in making such a rebuttal." *United States* v. *Velazquez*, 749 F.3d 161, 185 n.23 (3d Cir. 2014). **In fact, "[t]he [Supreme] Court [in *Doggett*] thus indicated that the government faces a high, and potentially insurmountable, hurdle in seeking to disprove general prejudice where the period of delay is extraordinarily long."** *Id.* **at 185. Although I have concluded Mr. El Naddaf did not establish specific prejudice, I conclude the government has failed to rebut the inherent prejudice of a nearly five-year delay, during which no steps were taken to make Mr. El Naddaf aware of the charges against him.**
**I further note that in sitting by designation on the Third Circuit, Judge Lipez deployed a somewhat different standard of review formulation from the one applied by the First Circuit, which has "repeatedly reviewed district court rulings for abuse of discretion,"** *United States* v. *Carpenter*, **781 F.3d 599, 607 (1st Cir. 2015). This formulation "varies from that used in most other circuits," including the Third Circuit in** *Velazquez,* **"which**

**review such claims de novo, albeit while applying clear error review to the district court's factual findings."** *Id.* **The different formulations do not appear to be material for purposes of my own responsibilities for nisi prius analysis in this case.** *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *23 (D. Mass. Mar. 16, 2023).

Your Honor also does an excellent review of the protections guaranteed by

the Sixth Amendment – none of which have protected Petitioner-Carpenter:

> The Sixth Amendment protects a defendant's right to a prompt resolution of criminal charges against him by providing "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial ...." U.S. Const. amend VI. The right to a speedy trial "is one of the most basic rights preserved by our Constitution." *Klopfer* v. *North Carolina*, 386 U.S. 213, 226, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967). **This fundamental constitutional protection recognizes "the general concern that all accused persons be treated according to decent and fair procedures."** *Barker* v. *Wingo*, 407 U.S. 514, 519, (1972).
> As the Supreme Court has explained, the Sixth Amendment speedy trial right is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." The Sixth Amendment implicitly recognizes that pretrial delays "might result in witness unavailability and fading memories, which may prejudice both defendants and prosecutors." (But the constitutional right to a speedy trial must also be read to "promote the interests of rehabilitation, minimize the amount of time potentially dangerous individuals are free on bond, prevent oppressive pretrial incarceration, **minimize anxiety and concern of the accused, and shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."** *Id.* In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, I am directed to engage in an "ad hoc" balancing test involving the following factors set out by the Supreme Court in *Barker*: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S. Ct. 2182. The First Circuit cautioned some thirty years ago that "[t]hese factors cannot be plugged into a formula that operates with scientific precision. Rather they must be considered on a case-by-case basis 'together with such other circumstances as may be relevant.'" *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *15–16 (D. Mass. Mar. 16, 2023).

Furthermore, there is no other case in any Circuit in this Country that can match the Due Process delays and violations in this case. Considering the *Barker* factors as suggested by Justice Sotomayor in her Opinion in *Betterman v. Montana*, 136 S.Ct. 1609 (2016), Petitioner's now 25 year-long "Kafkaesque" odyssey with the vision provided by *Betterman*, his preindictment delay of four years was longer than the delay in *Marion*, the inexplicable delay from June 2008 to September 2011 was longer than the delay in *Moore*, and now his total Due Process delay is more than double the seven-year delays of *United States v. Loud Hawk*, 474 U.S. 302 (1986) and *Doggett*. Now that the Supreme Court has clearly laid out the rules of Mail & Wire Fraud in *Ciminelli*, *Percoco*, and *Binday*, this Court should not ignore the clear violations of Petitioner's Constitutional rights and should strike the Manson-Universitas Brief as "scandalous" as well as "redundant" and "impertinent" to an ERISA Plan's denial of a fraudulent claim in October of 2009.

Petitioner respectfully asserts that there was no fraud in this case as a matter of law, nor did he have the "Fair Warning" in his indictment which is the cornerstone of American jurisprudence. But even assuming, *arguendo*, that Petitioner did something wrong or illegal, he certainly did not receive a fair trial in either of his two trials in 2005 and 2008. Because of the pre-indictment delay between January of 2001 and September of 2004, and the post-trial Due Process delay between sentencing of almost six years and the total Due Process delay of 15

years, it is Petitioner who should have the landmark case for both violations of the

Due Process Clause under *United States v. Lovasco*, 431 U.S. 782 (1977) and *United*

*States v. Marion*, 404 U.S. 307 (1971). In fact, it is significant that the delay of 39

months from Petitioner's trial in 2008 through September 2011 - when Judge

O'Toole granted Petitioner's second new trial order - was longer than the delay for

convicted murderer Rocky Moore. *See, e.g., Moore v. Arizona*, 414 U.S. 25 (1973):

> "Moreover, prejudice to a defendant caused by delay in bringing him
> to trial is not confined to the possible prejudice to his defense in those
> proceedings. Inordinate delay, "wholly aside from possible prejudice
> to a defense on the merits, may `seriously interfere with the defendant's
> liberty, whether he is free on bail or not, and . . . **may disrupt his**
> **employment, drain his financial resources, curtail his associations,**
> **subject him to public obloquy, and create anxiety in him, his family**
> **and his friends.' These factors are more serious for some than for**
> **others, but they are inevitably present in every case to some extent,**
> **for every defendant will either be incarcerated pending trial or on**
> **bail subject to substantial restrictions on his liberty.**" *Moore* at 27,
> citing *Marion* at 320-21.

The delay in Petitioner's case also exceeds that of *United States v. Handa*,

892 F.3d 95 (1st Cir. 2018) and *United States v. Irizarry-Colon*, 848 F.3d 61 (1st

Cir. 2017) combined, so that Petitioner's conviction and indictment will be vacated

someday. Ironically, those two seminal cases in the First Circuit both cite

Petitioner's case. *See Handa* at 101, citing *United States v. Carpenter*, 781 F.3d

599, 610 (1st Cir. 2015) ("[d]elay of around one year is considered presumptively

prejudicial, and the presumption that delay prejudices the defendant intensifies over

time."), and *Irizarry- Colon* at 68 (same). The Speedy Trial violations in

Petitioner's case are also not a close call as there was no reason for the delay from June 2008 to May 2015, nor was there any balancing tests done in the interests of justice. See *United States v. Zedner*, 547 U.S. 489, 507 (2008). Starting in 2005, Petitioner-Carpenter had six different Speedy Trial Act motions all denied for clearly erroneous reasons.

Moreover, the Barker factors that Justice Sotomayor stated in *Betterman*, and the seven-year delay between Petitioner's second trial in June 2008 and the First Circuit's decision in May 2015 (ignoring fundamental legal principles of not only the First Circuit but the Supreme Court as well), mandates that Petitioner's indictment and conviction be vacated. There were no reasons placed on the docket as required by §3161(h)(7) and the Supreme Court's decision in *Bloate v. United States*, 559 U.S. 196 (2010). Thus, the extraordinary delay in Petitioner's case is far longer than any delay in *United States v. Dezeler*, 81 F.3d 86 (8th Cir. 1996) (delay of only one day); *United States v. Huete-Sandoval*, 668 F.3d 1 (1st Cir. 2011) (delay of only 16 days), and *Bloate and United States v. Tinklenberg*, 131 S.Ct. 2007 (2011) (delays of only 9 days). As the Supreme Court has explained, "The relevant provisions of the Act are unequivocal," and "[t]he sanction for a violation of the Act is dismissal." *Zedner* at 507, 509. If "the trial does not begin on time, the indictment or information must be dismissed." Id. at 508. At this point, all of the Exchangors have been paid back many times their original losses, almost $50 million on an $8

12

million loss in the great NASDAQ stock market crash of 2000, 24 years ago. The Exchangors received $14,000,000 before Petitioner's Second Trial in 2008 and fully released Petitioner in 2015 (and some actually forgave Petitioner), the same year that Universitas started suing Jack Robinson.

Petitioner's family has also suffered through this ordeal not only by numerous lost business opportunities and banks severing ties with them, but simply through the personal pain of watching their loved one suffer while incarcerated and through relentless litigation by the government. *United States v. Ferreira*, 665 F.2d 701 (6th Cir. 2011), *Dixon v. White*, 210 Fed. Appx. 498 (6th Cir. 2007), *United States v. Erenas-Luna*, 560 F.3d 772 (8th Cir. 2009), *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006).

Therefore, allowing the Manson-Universitas Brief to stay on this Court's Docket will continue to hurt innocent family members and other innocent parties like the innocent Defendant, Jack Robinson's Mother, Mrs. Lillian Granderson. This Court should strike the Manson Brief pursuant to Rule 12(f) sua sponte immediately.

## II.   THE COURT HAS A DUTY TO STRIKE SCANDALOUS MATERIAL THAT HAS NO BEARING ON THE CASE BUT IS MERELY MALICIOUS AND VEXATIOUS

The First Circuit has made it clear that this Court has the discretion to strike Universitas's Motion for Summary Judgment because it is not only filled with redundant and scandalous materials but it is also filled with defamatory and libelous falsehoods that are malicious and vexatious and have nothing whatsoever to do with the present case against the Defendant, Mrs. Lillian Granderson. As the First Circuit stated in *Riddick v. Boston Housing Authority*:

> Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).
>
> Courts have "considerable discretion" to strike material under Rule 12(f). *Alvarado-Morales v. Digital Equip. Corp.,* 843 F.2d 613, 618 (1st Cir. 1988). Rule 12(f) motions, however, "are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Manning v. Boston Medical Center*, 725 F.3d 34, 59 (1st Cir. 2013) (quoting *Boreri v. Fiat S.p.A.,* 763 F.2d 17, 23 (1st Cir. 1985)). Nevertheless, Rule 12(f) is "designed to reinforce the requirement in [Rule 8(d)(1)] that pleadings be simple, concise, and direct." *Hayes v. McGee*, No. 10-40095-FDS, 2011 WL 39341, at *1 (D. Mass. Jan. 6, 2011). Therefore, "a pleading that violates the principles of Rule 8 may be struck 'within the sound discretion of the court.'" *Id.*; *see also Barth v. United States*, No. 2:18-cv-00201-JAW, 2018 WL 5793845, at *2-3 (D. Me. Nov. 5, 2018) (granting defendant's motion to strike the plaintiff's complaint in its entirety under Rule 12(f) for failure to comply with Rule 8). *Riddick v. Bos. Hous. Auth.*, No. CV 21-11349-NMG, 2022 WL 21740470, at *2–3 (D. Mass. May 26, 2022), report and recommendation adopted (July 6, 2022), subsequently aff'd, No. 22-1557, 2023 WL 7806973 (1st Cir. June 20, 2023.

The right of access to the courts is neither absolute nor unconditional and the Constitution confers no right to prosecute frivolous or malicious actions. *See Winslow v. Hunter,* 17 F.3d 314, 315 (10th Cir.1994). "The goal of fairly dispensing justice ... is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [claims]." *In re Sindram,* 498 U.S. 177, 180, (1991).

The Court of Appeals for the First Circuit affirmed the striking of a complaint where the allegations were "argumentative, prolix, redundant, and verbose." *McCoy v. Providence Journal Co.,* 190 F.2d 760, 766 (1st Cir. 1951). In the words of the *McCoy* Court:

> "[i]t is hard to imagine a pleading more completely at variance with both the letter and the spirit of Rule 8(e)(1) which requires that each averment of a pleading be simple, concise, and direct." *Id.* Similarly, the District Court struck a complaint in its entirety for failing to comply with Rule 8(a) and 8(e)(1) when it was "the complete antithesis of the type of complaint contemplated by Rule 8(a)(2)." *Martin v. Hunt,* 28 F.R.D. 35, 36 (D. Mass. 1961).

Perhaps the best description of striking an entire motion and an entire brief can be found in *Barth v. United States* where the Court struck the entire brief submitted in *Barth*:

> The United States has also argued that the complaint should be struck in its entirety under Rule 12(f). As the Government recognizes, "[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." (citing 4 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (1st ed. 1969)) (Wright & Miller). However, motions to strike under Rule 12(f) have been granted when "the presence of

the surplusage will prejudice the adverse party." In addition, "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations", especially when the subject of the allegations is the integrity of the judiciary. See e.g. *Skolnick v. Hallett*, 350 F.2d 861, 862 (7th Cir. 1965) (court struck complaint in which Plaintiff alleges that defendants conducted a 'kangaroo court' with him as a victim); *In re Moody*, 105 B.R. 268, 370-71 (S.D. Tex. 1989) (court struck complaint in which Plaintiff "frequently veers off course ... to indulge in scurrilous, quasi-paranoidal personal attacks on various federal and state judges, parties and attorney in this action and third parties" as a "graphic violation" of Rule 12(f) ). As motions to strike under Rule 12(f) are "an extreme and disfavored measure", *see EEOC v. Joe Ryan Enters., Inc.*, 281 F.R.D. 660, 662 (M.D. Ala. 2012), the Court takes pause before granting the Defendant's motion on such grounds. However, the Court also hesitates to leave the Complaint on the record given the prejudice it causes the Defendant and other individuals who are the subject of its attacks. Furthermore, the Court cannot grant the relief that Mr. Barth's Complaint seeks, and the Complaint does not comply with the requirements of the Federal Rule of Civil Procedure for the contents of a pleading. The Court GRANTS the Defendant United States of America's Motion to Strike Plaintiff's Complaint in Toto under Rule 12(f) or, in the Alternative, to Dismiss under Rule 8(A)(2) and (D)(1) (ECF No. 5). The Court STRIKES Plaintiff's Complaint and attachments. *Barth v. United States*, No. 2:18-CV-00201-JAW, 2018 WL 5793845, at *2–3 (D. Me. Nov. 5, 2018), aff'd, No. 18-2199, 2020 WL 5904427 (1st Cir. May 5, 2020).

Similarly, the First Circuit in *Alvarado-Morales* stated the same principles for dismissing an impertinent or scandalous matter under FRCP Rule 12(f):

> Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have "considerable discretion" to strike material under Rule 12(f). *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988).

## III.   THE UNIVERSITAS MOTION FOR SUMMARY JUDGMENT SHOULD BE STRICKEN AS A MATTER OF LAW

Rule 12(f) provides this Court with the power to strike in its entirety any pleading that is "redundant, immaterial, impertinent, or scandalous". Respectfully, because the word "or" is used in Rule 12(f), this Court has four good reasons to strike the entire Manson-Universitas Brief. As the Second Circuit described this Court's power:

> The Supreme Court has explained that "[e]very court has supervisory power over its own records and files" to ensure they "are not used to gratify private spite or promote public scandal" or "serve as reservoirs of libelous statements for press consumption." This supervisory function is not only within a district court's power, but also among its responsibilities. In practice, district courts may employ several methods to fulfill this function. They may, for instance, issue protective orders forbidding dissemination of certain material "to protect a party or person from annoyance, embarrassment, oppression, or undue burden" and require that filings containing such material be submitted under seal. If parties then seek to file such materials, the court may deny them leave to do so. District courts may also seek to counteract the effect of defamatory statements by explaining on the record that the statements appear to lack credibility. Moreover, under Federal Rule of Civil Procedure 12(f), the district court may strike such material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous." Because such rejected or stricken material is not "relevant to the performance of the judicial function" it would not be considered a "judicial document" and would enjoy no presumption of public access. Finally, in appropriate circumstances, district courts may impose sanctions on attorneys and parties under Federal Rule of Civil Procedure 11(c). *Brown v. Maxwell*, 929 F.3d 41, 51–52 (2d Cir. 2019).

Similarly, Your Honor has the power to strike the entire Manson-Universitas

Brief even without this Motion to Strike because the filing has nothing to do with

this case:

> Fed. R. Civ. P. 12(f). Courts may strike material from the pleadings either "on
> its own" or "on motion made by a party." *Id.* Although motions to strike
> material *solely* "on the ground that the matter is impertinent and immaterial"
> are disfavored, when material is also "scandalous," no such presumption
> applies. *Cf. Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d
> Cir. 1976); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654,
> 664 (7th Cir. 1992) ("Allegations may be stricken as scandalous if the matter
> bears no possible relation to the controversy or may cause the objecting party
> prejudice."); ("Motions to strike are not generally favored, except in relation
> to scandalous matters."); *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d
> 613, 617–18 (1st Cir. 1988) (categorizing as scandalous "matter which
> impugned the character of defendants"). *Brown v. Maxwell*, 929 F.3d 41, 52
> (2d Cir. 2019).

Clearly this Court has the power to sanction Attorney Manson and Universitas

even without reading the 1,960 pages of irrelevant Exhibits – especially Exhibit 70

which has nothing to do with the denial of the fraudulent Universitas claim by an

ERISA Plan in 2009 – but it does prove that both Jack Robinson and Sharon Siebert

are residents of Florida thereby destroying diversity for purposes of this Court's

jurisdiction:

> While common law courts have generally interpreted the litigation privilege
> broadly, they nevertheless maintain an important (if rarely implemented)
> limitation on its scope: to qualify for the privilege, a statement must be
> "material and pertinent to the questions involved." *Front*, 24 N.Y.3d at 718,
> 4 N.Y.S.3d 581, 28 N.E.3d 15 (quoting *Youmans v. Smith*, 153 N.Y. 214, 219–
> 20, 47 N.E. 265 (1897)). It follows, then, that immaterial and impertinent
> statements are (at least nominally) actionable, particularly when they are "so

needlessly defamatory as to warrant the inference of express malice." *Id.* (same). It seems to us that when a district court strikes statements from the record pursuant to Fed. R. Civ. P. 12(f) on the ground that the matter is "impertinent" and "immaterial," it makes the very same determination that permits a defamation action under the common law. We think the judicial system would be well served were our common law courts to revitalize this crucial qualification to the litigation privilege. *Brown v. Maxwell*, 929 F.3d 41, 53 (2d Cir. 2019).

## PRAYER FOR RELIEF

Respectfully, Petitioner does not need Perry Mason's help to say that the Manson-Universitas Brief is "Incompetent, Irrelevant, and Immaterial". More importantly, it is clearly "redundant" and overly verbose, filled with actionable defamation and libel. Worst of all is not that the Brief is "scandalous" to Petitioner – but rather it is clearly "impertinent" and disrespectful of Your Honor, the Court, and scarce judicial resources that could be better used to vacate the convictions of people like Petitioner who were accused of a "non-crime" that they actually and factually did not commit. When someone submits a libelous document like the Manson-Universitas Brief on this Court's Docket which is deemed to be truthful, it is far worse than a defamatory article in the *Boston Globe* which is why Petitioner prays that this Court strike the Brief in its entirety.

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT. 06092
860-573-7770
dcarpentermail@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel E. Carpenter, hereby certify that on this 9th day of September, 2024, a

copy of the foregoing was sent by overnight mail to the Clerk of the Court with a

courtesy copy to the Honorable Douglas P. Woodlock. Copies were also sent by

email to all counsel of record.

Respectfully Submitted,

<u>/s/ Daniel E. Carpenter</u>
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT. 06092
860-573-7770
dcarpentermail@gmail.com

21