# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC, ) | |
| Plaintiff ) | |
| v. ) | **Case No. 15-cv-11848-DJC** |
| LILLIAN GRANDERSON as successor in interest to JACK E. ROBINSON, ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                      **March 21, 2025**

## I.    Introduction

Plaintiff Universitas Education, LLC ("Universitas") has filed this lawsuit against Defendant Lillian Granderson ("Granderson") as successor in interest to Jack E. Robinson ("Robinson") asserting claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I), aiding and abetting fraud (Count II), breach of fiduciary duty (Count III), negligent misrepresentation and negligent opinion (Counts IV and V), aiding and abetting a breach of fiduciary duty (Count VII), civil conspiracy to commit fraud and breach of fiduciary duty (Count VIII) and unjust enrichment (Count X), D. 1.[1]  Both parties have now moved for summary

---

[1] Universitas's complaint also asserted claims of professional malpractice (Count VI), conversion (Count IX) and statutory theft (Count XI), D. 1.  This Court previously dismissed the claims for professional malpractice and conversion, and Universitas withdrew the claim for statutory theft, D. 34-1 at 6-7; see D. 237 at 32–33 & n.7.

judgment against the other on all counts, D. 236; D. 241. Granderson has also moved to dismiss Universitas's complaint, D. 240. For the reasons stated below, the Court DENIES Granderson's motion to dismiss, D. 240, ALLOWS Granderson's motion for summary judgment with respect only to the unjust enrichment claim, but DENIES Granderson's motion for summary judgment with respect to all other counts, D. 241. The Court DENIES Universitas's motion for summary judgment with respect to unjust enrichment but ALLOWS Universitas's motion for summary judgment with respect to all other counts, D. 236.

## II.    Factual Background

This case is one of many in Universitas's pursuit to recover $30 million in insurance proceeds owed to it since 2008. Robinson, the original defendant in this case, was one of multiple individuals and entities involved with the non-disbursement of these proceeds, along with Daniel Carpenter.

The Court draws the following facts from the parties' statements of undisputed facts and accompanying exhibits, D. 237 (containing Universitas's statement of undisputed facts); D. 243 (containing Granderson's response to Universitas's statement of undisputed facts); D. 258 (containing Granderson's statement of undisputed facts); D. 259 (containing Universitas's response to Granderson's statement of undisputed facts); D. 264 (containing further responses to Universitas's statement of undisputed facts). Unless otherwise noted, all these facts are undisputed.[2]

---

[2] In addition to the undisputed facts in the record, the Court takes judicial notice of the rulings and factual findings by other courts in related civil and criminal proceedings. Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) (observing that "federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand").

### A.    Robinson and Carpenter Controlled Entities

Carpenter has been convicted of numerous felonies for fraud and related charges.  D. 237 ¶ 1; D. 259 ¶ 1;[3] see United States v. Carpenter, 736 F.3d 619, 622–26, 632 (1st Cir. 2013); United States v. Carpenter, 190 F. Supp. 3d 260, 301 (D. Conn. 2016), aff'd sub nom. United States v. Bursey, 801 F. App'x 1 (2d Cir. 2020).  Nova Group, Inc. ("Nova") was the trustee of the Charter Oak Trust ("COT").  D. 237 ¶ 5; D. 259 ¶ 5.  Carpenter controlled business entities including but not limited to the COT, Nova, Grist Mill Capital ("GMC") and Grist Mill Holdings ("GM Holdings") (collectively, the "Carpenter Controlled Entities" or "CCEs").  D. 237 ¶ 7; D. 259 ¶ 7; Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-1590-LTS-HBP, 2013 WL 6123104, at *1, 4 (S.D.N.Y. Nov. 20, 2013).   Benistar Administrative Services, Inc. ("BASI") aggregated resources and employees of many of these entities including Nova, the COT, GMC, GM Holdings and Avon Capital, LLC ("Avon").  D. 237 ¶ 9; D. 259 ¶ 9; D. 237-3 at 32[4]; see Carpenter, 190 F. Supp. 3d at 274 (observing that "the evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved" and "also shows that corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes").

---

[3] To the extent that Granderson's response to a statement of fact (or a part thereof) did not admit or deny same, that assertion is taken as admitted.  Lopez-Hernandez v. Terumo Puerto Rico LLC, 64 F.4th 22, 27 (1st Cir. 2023) (deeming facts admitted where the opposing party's responses did "not actually oppose the truth of the statements [the movant] offered"); see D. Mass. L.R. 56.1 (cautioning that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties").

[4] Although Granderson disputes that BASI "was the 'centerpiece' of a 'network' of any kind," D. 259 ¶ 9, the sworn, uncontroverted testimony of Peter A. Goldman, Nova's Rule 30(b)(6) representative, establishes that BASI aggregated resources and employees from numerous business entities, D. 237-3 at 32; see Carpenter, 190 F. Supp. 3d at 273.

Nova did not have any employees and contracted out management of the COT to BASI.  D. 237 ¶ 10; D. 259 ¶ 10; D. 264 ¶ 4; D. 237-2 at 12, 16–18 (transcript of deposition of Bruce Mactas).

The United States District Court for the District of Connecticut, which adjudicated Carpenter's criminal case (the "Criminal Court"), concluded that the COT "was formed by [Carpenter] to serve, and did serve, as a vehicle for obtaining" stranger-originate life insurance ("STOLI") policies.  Carpenter, 190 F. Supp. 3d at 273; see D. 237 ¶ 11; D. 259 ¶ 11.  "A STOLI policy differs from a regular policy in that it is obtained not for estate planning purposes but for transfer to an investor with no insurable interest in the life of the insured."  Carpenter, 190 F. Supp. 3d at 264.  GMC and Avon paid the premiums for the STOLI policies in the COT.  Carpenter, 190 F. Supp. 3d at 273; see D. 237 ¶ 11; D. 259 ¶ 11.  The financing for these premiums came from Ridgewood Finance, Inc. ("Ridgewood").  D. 237 ¶ 12; D. 259 ¶ 12; D. 237-6 at 2 (settlement agreement among GMC, Avon, COT and Ridgewood, effective September 20, 2010); D. 237-5 at 10–11 (transcript of bench trial in Carpenter's criminal case).  The Criminal Court concluded that the COT made misrepresentations in its policy applications to conceal that the policies were intended for resale.  Carpenter, 190 F. Supp. 3d at 281; see D. 237 ¶ 13; D. 259 ¶ 13.

Robinson served as the General Counsel to BASI and the General Counsel and Vice President to Nova.  D. 237 ¶¶ 14, 34; D. 259 ¶¶ 14, 34; D. 257-2 at 10, 14–15 (transcript of deposition of Robinson); D. 237-6 at 58 (letter signed by Robinson as Vice President of Nova).[5] Robinson was a target of a grand jury investigation, along with other individuals and companies associated with the CCEs.  D. 237 ¶ 15; D. 259 ¶ 15; D. 237-3 at 27 (stipulation regarding grand jury investigation).  Robinson served as a liaison among entities in the Carpenter organization and

---

[5] Although, as Granderson notes, Robinson's testimony does not establish that he served as Vice President of Nova, D. 259 ¶ 14; see D. 257-2 at 14–15, it is undisputed that Robinson signed at least one letter as Vice President of Nova, D. 237 ¶ 34; D. 259 ¶ 34; D. 237-6 at 58.

third parties, took part in negotiations with Ridgewood on behalf of GMC and Nova and signed both GMC and Nova's agreements with Ridgewood.  D. 237 ¶ 16; D. 259 ¶ 16; D. 237-5 at 9 (transcript of bench trial); D. 237-6 at 29–34 (GMC's appointment agreement with Ridgewood); D. 237-6 at 36–41 (Nova's appointment agreement with Ridgewood).  Robinson set up accounts with Christiana Bank and Trust, which served as the insurance trustee for the COT, and was one of three signatories on each account.  D. 237 ¶ 17; D. 259 ¶ 17; D. 237-6 at 43–48 (correspondence from Robinson, requesting Christiana Bank and Trust open accounts for the COT and GMC). Invoices for these accounts were sent to Robinson on at least one occasion.  D. 237 ¶ 17; D. 259 ¶ 17; D. 237-6 at 50–64 (correspondence with Robinson regarding fee invoices).

In addition, in December 2006, Robinson circulated two versions of a spreadsheet which the Criminal Court determined "became the basis for [the] COT" and "contemplated the resale of life insurance policies on the secondary market after the contestability period."  Carpenter, 190 F. Supp. 3d at 276; D. 237-1 at 2–5.  The first version of that spreadsheet, which Robinson circulated to Carpenter and other members of the CCEs on December 14, 2006, "illustrates what GMC could earn by financing and selling a hypothetical life insurance policy with a face value of $5 million and an annual premium of $300,000" and "provides an estimate of the debt GMC would incur by borrowing funds to pay the premiums."  Carpenter, 190 F. Supp. 3d at 275; D. 237-1 at 4–5.  The spreadsheet "then calculates the total proceeds from a sale of the policy at different percentages of the face value," and subtracts "[v]arious costs and fees . . . from the total," including "the cost of repaying GMC's debt[,] . . . an Origination Fee (20 percent of total premiums paid), a Placement Fee (5 percent of the policy's face value), a Premium Funding Fee (3 percent of the policy's face value), and a Termination Fee (1 percent of the policy's face value)."  Carpenter, 190 F. Supp. 3d

at 275; D. 237-1 at 5.  According to the spreadsheet, any remainder is then distributed to the insured.  Carpenter, 190 F. Supp. 3d at 275; D. 237-1 at 5.

Robinson circulated a revised version of this spreadsheet on December 17, 2006, which changed the fees that GMC would collect out of the total proceeds of the sale and noted that "[i]f we charge origination fee of 20% of premiums, premiums get repaid, and a placement fee of 4.85% of face, then we make a $200K profit on each $5MM deal."  D. 237-1 at 2–3; see Carpenter, 190 F. Supp. 3d at 275–76.  The revised spreadsheet removed the "Premium Funding Fee" and the "Termination Fee" and left only the "Origination Fee" and the "Placement Fee."  Compare D. 237-1 at 3 with D. 237-1 at 5.  The Criminal Court described this revision as "significant because these two fees, and no others, were ultimately integrated into the COT documents."  Carpenter, 190 F. Supp. 3d at 276.  In addition, the Criminal Court observed that "[t]here is no indication of an intent to sell policies to the insureds themselves.  Indeed, the Origination and Placement fees contemplated by Mr. Robinson's revised spreadsheet could be expected to act as a deterrent to a purchase by an insured."  Id.

**B.**    **Denial of Universitas's Claim for Life Insurance Proceeds**

Sash Spencer ("Spencer") took out two life insurance policies valued at $30 million and named Universitas as the beneficiary.  D. 243 ¶¶ 1–2; D. 258 ¶ 1; D. 237 ¶¶ 18–19; D. 259 ¶¶ 18–19; D. 237-6 at 56–58 (letter from Robinson noting that "[p]ursuant to irrevocable beneficiary designation forms executed by [Spencer] . . . [Spencer] designated Universitas . . . as the sole and exclusive irrevocable beneficiary of all benefits payable pursuant to the Trust"); D. 237-6 at 60 (Spencer's beneficiary designation form).  The first policy had a face value of $10 million and was

taken out on or about December 17, 2006[6] and issued on December 22, 2006.  D. 237 ¶ 20; D. 259 ¶ 20[7]; see D. 237-7 at 13–14 (the First Amended Statement of Claim in the arbitration between Universitas and Nova).  The second policy had a face value of $20 million, and was taken out on March 19, 2007, and issued on December 22, 2006.  D. 237 ¶ 21; D. 259 ¶ 21[8]; D. 237-7 at 14; D. 237-7 at 42–43 (declaration of Valerie Loftin).  In 2008, Spencer amended his beneficiary designations to make Universitas the sole, irrevocable beneficiary of the policies.  D. 237 ¶ 22; D. 259 ¶ 22; D. 237-6 at 56–58 (letter from Robinson acknowledging same).  Spencer died on June 10, 2008 and Universitas subsequently sought the death benefits (the "Spencer Proceeds").  D. 243 ¶¶ 3–4; D. 258 ¶ 1; see D. 237 ¶ 24; D. 259 ¶ 24; D. 237-7 at 42–48 (declaration of Valerie Loftin).

On or about May 5, 2009, Wayne Bursey, in his capacity as "Named Trustee of the Charter Oak Trust Welfare Benefit Plan" sued the insurer, Lincoln Life Insurance Company ("Lincoln") for its failure to pay the $30 million in death benefits.  D. 237 ¶ 25; D. 259 ¶ 25; D. 237-7 at 60–69.  These benefits were deposited into the COT bank account on May 18, 2009, D. 237 ¶ 98; 259 ¶ 98; D. 237-14 at 15 (bank record).  In a July 23, 2008 letter to Universitas, Robinson claimed, on behalf of Nova, that the COT was entitled to keep $6 million in "fees" from the $30 million in death benefits because "certain purported amendments to the applicable Declaration of Trust

---

[6] Universitas asserts, and Granderson admits, that the policy was taken out on December 16, 2006, D. 237 ¶ 20; D. 259 ¶ 20, but the First Amended Statement of Claim, which Universitas cites for this date, states that, "[o]n or about December 17, 2006, Mr. Spencer, then-CEO of Holding Capital Group, Inc. ('Holding'), joined the Plan on behalf of Holding," D. 237-7 at 13–14.  The difference between the dates is not material to the resolution of the pending motions.

[7] Paragraph 20 of Granderson's response to Universitas's statement of undisputed facts states that "paragraph 21 is Admitted," but appears to be referencing paragraph 20 of Universitas's statement of undisputed facts.

[8] Paragraph 21 of Granderson's response to Universitas's statement of undisputed facts states that "paragraph 22 is Admitted," but appears to be referencing paragraph 21 of Universitas's statement of undisputed facts.

permitted [the fee]." D. 243 ¶¶ 5–6; D. 258 ¶ 1; D. 237 ¶¶ 34–35; D. 259 ¶¶ 34–35; D. 237-6 at 56–58 (Robinson's letter). Neither the COT nor anyone affiliated with it provided Spencer or Universitas with a copy of any such amendments, and Universitas disputed that the COT was entitled to this fee from late 2008 through early 2009. D. 243 ¶¶ 7–8; D. 258 ¶ 1. The Criminal Court noted that "[i]t appears that the Declaration of Trust was altered by [Carpenter] in the wake of Mr. Spencer's death for the specific purpose of enabling the COT to keep twenty percent of the total death benefit of $30 million." Carpenter, 190 F. Supp. 3d at 294.

Counsel for Mary Spencer, Mr. Spencer's widow, with whom Universitas had an agreement to pay a portion of the Spencer Proceeds, informed Robinson that the COT trust agreement and disclosure agreement did not authorize Nova to retain any portion of the benefits. D. 237 ¶ 38; D. 259 ¶ 38; D. 237-9 at 17 (e-mail from counsel for Mary Spencer). In a letter dated February 25, 2009, counsel for Universitas informed the COT and Nova that there was no genuine provision in the COT Declaration authorizing the retention of this portion of the Spencer Proceeds. D. 237 ¶ 45; D. 259 ¶ 45; D. 237-9 at 55–56 (letter from counsel for Universitas).

In a letter dated March 2, 2009, Robinson claimed that Universitas's dispute concerning the validity of the fees constituted a "threat of litigation" in violation of the COT Declaration's "no contest clause" which would entitle the COT to terminate Spencer from the COT and keep the $30 million death benefit. D. 243 ¶ 9; D. 258 ¶ 1; D. 237 ¶¶ 46–47; D. 259 ¶¶ 46–47; D. 237-9 at 58–59 (letter from Robinson). Counsel for Universitas later clarified that its letter was not intended as a threat of litigation. D. 237 ¶ 47; D. 259 ¶ 47; D. 237-9 at 50 (letter responding to Robinson). In a May 29, 2009 e-mail, Alex Sgoutas, a business advisor for Universitas, communicated a desire to reach an agreement for the distribution of the Spencer Proceeds. D. 237 ¶ 48; D. 259 ¶ 48; D. 237-9 at 61–63 (e-mail from Sgoutas). In response, Robinson claimed that Sgoutas's e-mail

constituted a threat of litigation, and all benefits would terminate if the e-mail was not withdrawn. D. 237 ¶ 49; D. 259 ¶ 49; D. 237-9 at 65 (e-mail from Robinson).

In a letter dated July 8, 2009, Robinson wrote that Universitas had failed to file a timely claim with the COT for the death benefits from the Spencer policies and was, therefore, not entitled to any such benefits. D. 243 ¶ 10; D. 258 ¶ 1; D. 237 ¶ 51; D. 259 ¶ 51; D. 237-9 at 67–72 (letter from Robinson). Universitas had already filed a claim at this time. D. 243 ¶ 16. Robinson's letter also claimed that GMC was instead entitled to the Spencer Proceeds based upon an agreement in which Spencer purportedly assigned his interest in the COT to GMC. D. 243 ¶ 11; D. 258 ¶ 1; 237 ¶ 52; D. 259 ¶ 52. Robinson's letter separately claimed to render null and void all prior communications regarding the Spencer Proceeds. D. 237 ¶ 55; 259 ¶ 55; D. 237-9 at 67–72 (letter from Robinson). Universitas submitted a written request for the agreement Robinson described, but that agreement was never produced. D. 243 ¶ 12; D. 258 ¶ 1. Universitas sent a claim to Nova, and in a July 30, 2009 letter, Nova acknowledged receipt of the claim and stated that an agreement between Mary Spencer and Universitas was a barrier to the payment of the Spencer Proceeds. D. 237 ¶ 56; D. 259 ¶ 56; D. 237-9 at 83–85 (letter from Bursey on behalf of Nova). Although the July 30, 2009 letter was signed by Bursey, Robinson testified that he had drafted it. D. 237 ¶ 57; D. 259 ¶ 57; D. 237-10 at 11 (transcript of Robinson's testimony before the arbitration).

In a September 11, 2009 letter to Universitas's new counsel, Robinson outlined issues preventing the disbursement of funds, sought to nullify previous communications (except for two letters from Nova) and threatened to deny Universitas's claim for benefits in its entirety if Universitas attempted to communicate with anyone other than Robinson. D. 243 ¶ 13; D. 258 ¶ 1; D. 237 ¶¶ 59–60; D. 259 ¶¶ 59–60; D. 237-11 at 5–6 (letter from Robinson). Robinson claimed

to be writing on behalf of and as counsel for the COT, Nova and BASI, but demanded all correspondence be directed to him at BASI.  D. 243 ¶ 14; D. 258 ¶ 1; D. 237-11 at 5–6.

In an October 2, 2009, letter, Nova denied Universitas's claim, alleging that:  (1) a settlement agreement with Mary Spencer constituted an illegal reversion of benefits; (2) Universitas failed to timely file a claim; (3) Universitas had threatened litigation against the COT and (4) GMC's alleged agreement with Spencer created a conflicting claim to the Spencer Proceeds.  D. 243 ¶ 15; D. 258 ¶ 1; D. 237 ¶ 62; D. 259 ¶ 62; D. 237-9 at 2–5 (letter from Bursey on behalf of Nova).  Robinson and Carpenter had been involved in creating the settlement agreement with Mary Spencer, which Nova now claimed was illegal.  D. 237 ¶ 39; D. 259 ¶ 39; D. 237-9 at 19–47 (e-mails among Robinson, Bursey and Carpenter circulating and discussing suggested revisions to the settlement agreement).  Universitas responded in a November 10, 2009 letter, indicated its intention to appeal the claim and demanded that Nova show that the "disputed funds are being held in a separate, interest-bearing account and will not be comingled with any other funds until the matter is fully resolved between the parties."  D. 237 ¶ 64; D. 259 ¶ 64; D. 237-11 at 11–16 (letter from Universitas's counsel, Paula Colbath).  Robinson responded in a November 18, 2009 letter, in which he refused to state that the funds were being held separately, insisted that Universitas's demand constituted a threat of litigation, again claimed that the settlement agreement with Mary Spencer constituted fraud and separately stated that the Spencer Proceeds were only $20 million.  D. 237 ¶ 65; D. 259 ¶ 65; D. 237-11 at 18–22 (letter from Robinson).  On November 25, 2009, Universitas submitted a formal appeal pursuant to section 8.02 of the Declaration of Trust.  D. 237 ¶ 68; 259 ¶ 68; D. 237-11 at 33–36 (letter from Universitas containing written appeal).  On February 2, 2010, after Universitas indicated to Nova that it had failed to decide the appeal in a timely fashion, Nova sent another letter accusing Universitas of

threatening litigation.  D. 237 ¶ 68; D. 259 ¶ 68; D. 237-11 at 38–39 (letter from Bursey on behalf of Nova).  Nova then denied the appeal on February 9, 2010.  D. 237 ¶ 69; D. 259 ¶ 69; D. 237-11 at 41–45 (letter from Bursey on behalf of Nova).

The Spencer Proceeds were never paid to Universitas, and instead were transferred for no consideration among numerous entities controlled directly or indirectly by Carpenter, including GMC.  D. 237 ¶ 28; D. 259 ¶ 28; see Universitas, 2013 WL 6123104, at *3; Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-1590-LTS-HBP, 2014 WL 3883371, at *3 (S.D.N.Y. Aug. 7, 2014).  Carpenter claimed that the money was diverted to GMC for the repayment of a debt and pursuant to a confidential settlement agreement.  D. 237 ¶ 29; D. 259 ¶ 29.  Multiple courts have, however, rejected this explanation.  D. 237 ¶ 29; D. 259 ¶ 29; Universitas, 2013 WL 6123104, at *10 (concluding "the transactions were for the sole purpose of retaining the benefit of the Life Insurance Proceeds for the Carpenters"); D. 237-7 at 137–40 (detailing Carpenter's obstructive conduct, the government contended in its sentencing memorandum that Carpenter committed perjury by "falsely claiming that COT had a legitimate debt that forced it to pay GMC instead of Universitas"), 167–73 (Carpenter's trial testimony claiming GMC was entitled to the Spencer Proceeds).  Instead, those courts determined that these funds were used to repay Ridgewood and to fund other policy premiums and were used to purchase a vacation home for Carpenter and for his family.  D. 237 ¶ 30; D. 259 ¶ 30; see Universitas, 2013 WL 6123104, at *3–6; D. 237-8 at 194 (trial testimony); D. 237-7 at 137–38.

### C.    Subsequent Distribution of the Spencer Proceeds

The Spencer Proceeds plus interest, totaling $30,677,276.85, were deposited into the COT bank account on May 18, 2009, D. 237 ¶ 98; 259 ¶ 98; D. 237-14 at 15 (bank record).  From there, these funds were subsequently transferred to GMC, and then funds from GMC were transferred to

and among multiple additional entities and individuals including Robinson, who had no legal entitlement to them.

Specifically, on May 21, 2009, $8,677,276.75 was transferred from the COT to GMC. D. 237 ¶ 100; 259 ¶ 100; D. 237-14 at 22 (bank record). On May 26, 2009, another $2,186,566.00 was transferred from the COT to GMC. D. 237 ¶ 100; D. 259 ¶ 100; D. 237-14 at 22 (bank record). On September 23, 2009, $50,000 was transferred from the GMC account to Robinson. D. 237 ¶ 101; 259 ¶ 101; D. 237-14 at 2 (bank record). On October 27, 2009, an additional $19,800,000 was transferred from the COT to GMC. D. 237 ¶ 102; D. 259 ¶ 102; D. 237-14 at 31–32 (checking withdrawal). On October 28, 2009, $19,000,000 was transferred from GMC to an account for GM Holdings. D. 237 ¶ 103; D. 259 ¶ 103; D. 237-14 at 36, 38–40 (bank records). On November 12, 2009, GM Holdings transferred $4,140,000 to the Carpenter Financial Group ("CFG"). D. 237 ¶ 104; 259 ¶ 104; D. 237-14 at 42, 47 (bank records). On October 9, 2009, $75,000 was transferred from CFG to Robinson. D. 237 ¶ 105; D. 259 ¶ 105; D. 237-14 at 51 (bank record). On November 9, 2009, an additional $100,000 was transferred from CFG to Robinson, followed by an additional $275,000 on November 25, 2009. D. 237 ¶ 106; D. 259 ¶ 106; D. 237-14 at 54 (bank record). On December 3, 2009, GM Holdings transferred an additional $7,000,000 to CFG. D. 237 ¶ 107; D. 259 ¶ 107; D. 237-14 at 64 (bank record). CFG then paid Robinson $125,000 on December 3, 2009, D. 237 ¶ 107; D. 259 ¶ 107; D. 237-14 at 58 (bank record), $125,000 on December 4, 2009, D. 237 ¶ 107; D. 259 ¶ 107; D. 237-14 at 58 (bank record), $60,000 on March 30, 2010, D. 237 ¶ 107; D. 259 ¶ 107; D. 237-14 at 60 (bank record), and $15,000 on May 11, 2011, D. 237 ¶ 108; D. 259 ¶ 108; D. 237-14 at 68 (check made out to Robinson).

### D.    Legal Proceedings

Universitas filed a demand for arbitration to recover the Spencer Proceeds on June 17, 2010 (the "Arbitration").  D. 243 ¶ 17; D. 258 ¶ 1.  On July 19, 2010, Nova informed the arbitrator that Robinson would serve as the corporate representative for Nova, BASI and GMC.  D. 243 ¶ 18; D. 258 ¶ 1; D. 237 ¶ 71; D. 259 ¶ 71; D. 237-12 at 2–4 (letter from Richard Order ("Order"), counsel for Nova).  During the Arbitration, Nova initially refused to provide information about the status of the Spencer Proceeds.  D. 237 ¶¶ 72–73; D. 259 ¶¶ 72–73; D. 237-12 at 6–7 (letter from Order).  On November 12, 2010, Bursey submitted an affidavit stating that Nova had assets in excess of $35 million.  D. 237 ¶ 73; 259 ¶ 73; D. 237-12 at 9 (Bursey's affidavit).  After Bursey submitted this affidavit, the arbitrator denied Universitas's motion for a preliminary injunction, but ordered Nova to submit a sworn assurance that the COT has the current ability to satisfy a judgment of $30 million, and stated that "[a]bsent such proof or sworn assurance . . . I may reconsider the prior ruling denying the preliminary injunction."  D. 237-15 at 36–37 (Arbitration order).  In line with this order, Robinson, on November 30, 2010, submitted a declaration stating that he was "familiar with the [COT's] operations, assets, liabilities and financial condition" and swore that the COT "has the current ability to satisfy a judgment of $30 million."  D. 237 ¶ 74; D. 259 ¶ 74; D. 237-12 at 11 (Robinson's declaration).  In reality, both the COT and Nova had closed their bank accounts in June 2010.  D. 237 ¶ 75; D. 259 ¶ 75; D. 237-12 at 19–22 (bank statements).  Universitas relied upon Robinson's representations regarding the COT's assets in continuing to arbitrate the case, D. 237 ¶ 79; D.  259 ¶ 79; D. 174 ¶ 14, and claims it did not learn that these statements were false until it received bank records from T.D. Bank in November 2012, D. 258 ¶ 2.  At the Arbitration, Robinson testified that the COT owed the Spencer Proceeds to GMC, and that Section 6.01 of the COT Declaration included a twenty percent holdback provision

as of January 2007.  D. 237 ¶¶ 81–82; D. 259 ¶¶ 81–82; D. 237-2 at 41–42, 96–97 (Robinson's testimony before the Arbitration).  On April 13, 2011, Robinson wrote a letter to T.D. Bank threatening litigation if T.D. Bank released the bank records of the COT.  D. 258 at 4; D. 258-3 at 2–3.

On January 24, 2011, an interim arbitration award determined that Nova, Bursey, BASI, Donal Trudeau, GMC and Carpenter violated their fiduciary duties by denying the claim for benefits under the COT and determined that no credible evidence showed that the COT and GMC ever consummated an agreement that competed with Universitas's claim for the Spencer Proceeds. D. 243 ¶¶ 20–21; D. 258 ¶ 3; D. 237 ¶¶ 83–85; 259 ¶¶ 83–85; D. 237-12 at 64–77.  That award was confirmed by the United States District Court for the Southern District of New York ("SDNY") on June 5, 2012, which entered a judgment of $30,181,880.30 in favor of Universitas. D. 243 ¶ 22; D. 258 ¶ 3; D. 237 ¶ 87; 259 ¶ 87; see Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-1590-LTS-HBP, 2012 WL 2045942, at *3 (S.D.N.Y. June 5, 2012), aff'd, 513 F. App'x 62 (2d Cir. 2013).  Nova then filed numerous motions for reconsideration and vacatur, all of which were denied.  D. 237 ¶ 88; D. 259 ¶ 88.

Robinson entered an appearance on behalf of Nova and the COT in SDNY on September 5, 2012, and on September 11, 2012 filed an amended motion to dismiss for lack of subject matter jurisdiction on behalf of both Nova and the COT, which the court denied.  D. 237 ¶¶ 90–92; D. 259 ¶¶ 90–92; Universitas Educ., LLC v. Nova Grp., Inc., No. 11-cv-1590-LTS-HBP, 2013 WL 11319248, at *2 (S.D.N.Y. May 21, 2013) (reflecting dismissal of the motion to dismiss for lack of subject matter jurisdiction as "wholly without merit"), vacated, 784 F.3d 99 (2d Cir. 2015) (vacating only as to sanctions directing Nova to deposit monies).  The court further sanctioned Robinson for filing that motion and concluded that he had done so in "bad faith and with a motive

to delay, harass, or needlessly increase the cost of litigation." D. 237 ¶ 93; D. 259 ¶ 93; Universitas Educ., LLC. Nova Group, Inc., No. 11-cv-1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142481, at *11 (S.D.N.Y. Sep. 30, 2013). Universitas sought post-judgment discovery and Robinson was found to be in contempt of court for his non-compliance with that discovery. D. 237 ¶¶ 94–95; D. 259 ¶¶ 94–95; D. 237-13 at 96–98 (Robinson's motion to quash subpoena), 101–09 (order adopting contempt).

Universitas filed two motions to turnover assets, pursuant to N.Y. C.P.L.R. § 5225. D. 237 ¶ 96; 259 ¶ 96; Universitas, 2014 WL 3883371, at *11. These resulted in the following judgments: $30,600,000 against Carpenter, $30,600,000 against GMC, $21,000,000 against GM Holdings, $11,140,000 against CFG, $6,710,065.92 against Avon, $5,000,000 against Phoenix Capital Management, LLC ("Phoenix"), $4,487,007.81 against Grist Mill Trust ("GMT") and $1,200,000 against Hanover Trust Company ("Hanover"). D. 237 ¶ 96; 259 ¶ 96; Universitas, 2014 WL 3883371, at *11. GMT satisfied the judgment against it, and Universitas asserts GMT is the only party to have done so. D. 237 ¶ 97; D. 259 ¶ 97; D. 237-13 at 112–13 (notarized satisfaction of judgment).

## III.    Procedural History

Universitas initiated this action against Robinson on May 14, 2015 before a different session of this Court (Woodlock, J.). D. 1, 2. Over the next eighteen months, Robinson filed and litigated numerous motions, including a motion to dismiss, D. 15, a motion to reconsider the denial of the motion to dismiss, D. 29, a motion to transfer the case to SDNY, D. 95, and a motion to compel arbitration, D. 113. Then, on November 28, 2017, the Court was notified of Robinson's death. D. 131.

After a stay of the matter until a personal representative of Robinson's estate could be appointed and a series of status reports and conferences regarding same, see D. 134–35, 139, 147–48, 150, 152, 155–56, 161–62, on September 3, 2019, Universitas moved for summary judgment on each of its remaining claims. D. 170. On February 7, 2023 the Court denied the motion without prejudice, because no party had yet been substituted for Robinson. D. 191 at 5. On May 8, 2023, the Court substituted Granderson, Robinson's mother and the executrix of his estate, for Robinson. D. 197. On July 12, 2023, the court granted default judgment for Universitas in the sum of $92,031,830.55. D. 204. On April 15, 2014, the First Circuit affirmed the substitution, but vacated the default judgment and remanded the case. D. 215, 216.[9] Upon remand, each party moved for summary judgment against the other on all counts – Universitas on August 22, 2024, and Granderson on September 9, 2024. D. 236; D. 241. Granderson also moved to dismiss Universitas's complaint on September 6, 2024, D. 240.[10]

On October 4, 2024, this matter was reassigned to this session (Casper, J.). D. 254. In response to Universitas's motion for summary judgment, D. 236, one day prior to the (already extended) deadline to file her opposition on October 15, 2024, D. 250, Granderson moved to extend the deadline for her opposition until after Universitas provides her with certain discovery. D. 256. On the October 15th deadline, Granderson then filed an opposition to Universitas's summary judgment motion. D. 258. A day later, on October 16, 2024, Granderson filed a Fed. R. Civ. P. 56(d) motion asking the Court to order Universitas to provide her with the requested

---

[9] This case has a complex, procedural history, as recounted by the First Circuit, D. 215 at 4–24, which this Court does not repeat here and instead has highlighted the events that lead to the pending, dispositive motions.

[10] Carpenter, who is not a party this action, has filed several motions including motions to dismiss the case, D. 238; D. 261, a motion to strike Universitas's motion for summary judgment, D. 245, a motion for reconsideration, D. 268, and a motion for clarification, D. 273. The Court has denied each these motions, D. 266; D. 272; D. 273.

discovery and to permit her to file a supplemental opposition to its summary judgment motion. D. 260. On November 6, 2024, the Court denied Granderson's requests. D. 265. On December 17, 2024, the Court then heard the parties on the cross motions for summary judgment and the motion to dismiss and took these matters under advisement. D. 275.

## IV.    Discussion

### A.    <u>Standards of Review</u>

#### 1.    *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. <u>Id.</u> Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. <u>Id.</u> Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." <u>García-Catalán</u>, 734 F.3d at 103 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

#### 2.    *Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of

proving its existence." <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995) (quoting <u>Taber Partners, I v. Merit Builders, Inc.</u>, 987 F.2d 57, 60 (1st Cir. 1993)).  When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." <u>Aversa v. United States</u>, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing <u>Murphy</u>, 45 F.3d at 522).

      *3.*    *Motions for Summary Judgment*

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000) (quoting another source).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000); <u>see</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." <u>Noonan v. Staples, Inc.</u>, 556 F.3d 20, 25 (1st Cir. 2009).  "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

**B.**    **<u>Res Judicata</u>**

Granderson argues that Universitas's claims are barred by *res judicata* based upon two turn-over proceedings in SDNY.  D. 243 at 8–13; D. 263 at 2–4; see Universitas, 2013 WL 6123104 at *13; Universitas, 2014 WL 3883371 at *13.

Because the federal court that issued those earlier judgments sat in diversity in New York, we apply the preclusion law of New York in deciding this issue since it is not "incompatible with federal interests."  Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508–09 (2001). Under New York law, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter."  In re Hunter, 827 N.E. 2d 269, 274 (N.Y. 2005).  New York applies a transactional approach to *res judicata*, which means that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  Id. (internal quotation marks and citation omitted).  Moreover, "a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them." Green v. Santa Fe Indus., Inc., 514 N.E. 2d 105, 108 (N.Y. 1987).  "New York takes 'a pragmatic and flexible attitude toward claim preclusion, recognizing that the doctrine, if applied too rigidly, could work considerable injustice.'"  Hansen v. Miller, 52 F.4th 96, 101 (2d Cir. 2022) (quoting Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111 (2021)); see Reilly v. Reid, 45 N.Y.2d 24, 28 (1978) (observing that "[i]n properly seeking to deny a litigant two 'days in court[,'] courts must be careful not to deprive him of one").

The turn-over proceedings were brought pursuant to N.Y. C.P.L.R. § 5525(b), which permits a party to obtain satisfaction of a judgment through a special proceeding. Id.  Universitas argues that *res judicata* cannot bar its claims because while a turn-over proceeding can be used as a "procedural mechanism for attacking a fraudulent conveyance by a judgment debtor," or can be

used to pierce the corporate veil and assert alter ego liability, <u>Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds by Picani v. CRL Transp., Inc.</u>, No. 18-cv-2056-KMK, 2020 WL 3619048, at *5 (S.D.N.Y. July 2, 2020), it is not a mechanism to otherwise assert substantive liability.  D. 258 at 10–11.

In <u>Universitas Educ., LLC v. Benistar</u>, No. 3:20-cv-00738-JAM, 2021 WL 965794, at *11–16 (D. Conn. Mar. 15, 2021) the court concluded that *res judicata* barred alter ego claims brought by Universitas, reasoning that those claims could have been brought in the turn-over proceedings. <u>Id.</u>  Granderson suggests that Universitas's claims in this case are also an attempt to impose "alter ego" liability and should likewise be barred by *res judicata.*  D. 243 at 10–12.  This argument, however, mischaracterizes Universitas's claims against Robinson.  They are not alter ego claims, but as discussed more fully below, Universitas seeks to impose liability upon Robinson for his own actions, including purported violations of RICO, fraud, breach of fiduciary duty and negligent misrepresentations.  D. 258 at 10–11; <u>Baby Phat Holding Co., LLC v. Kellwood Co.</u>, 997 N.Y.S.2d 67, 70 (N.Y. App. Div. 2014) (observing that "to state a claim for alter-ego liability plaintiff is generally required to allege complete domination of the corporation . . . and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury") (internal citation and quotation marks omitted).[11]  Granderson points to no authority which suggests the claims asserted against Robinson here could have been brought in the prior proceeding.  D. 243 at 8–13; D. 263 at 2–4.  For all of these reasons, the claims against Robinson

---

[11] Granderson asserts that "[t]he claims against Robinson are based solely upon his alleged work as General Counsel for Nova and BASI, Manager of [GMC], Vice President of BASI, and his 'close personal and business relationship with Carpenter,'" D. 243 at 11, but the fact that Robinson engaged in the purported misconduct pursuant to these roles does not transform Universitas's claims against Robinson for his own misconduct into claims for alter ego liability. D. 258 at 11.

are not barred by *res judicata*.  Nabisco, Inc. v. Amtech Int'l, Inc., No. 95-cv-9699-LBS, 2000 WL 35854, at *8–9 (S.D.N.Y. Jan. 18, 2000) (concluding that a claim was not barred by *res judicata* based upon an earlier proceeding because the claim could not have been brought in that proceeding).[12]

## C.    ERISA Preemption

"ERISA preemption analysis involves two central questions:  (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan."  Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 49 (1st Cir. 2000) (alteration omitted) (quoting McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998)).  According to the First Circuit, the "crucial factor" in determining the existence of an ERISA plan is whether the employer "undertook to provide benefits to its employees 'on a regular and long term basis.'" Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 7 (1st Cir. 2013) (quoting Wickman v. Nw. Nat. Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990)).

Here, Granderson insists in a conclusory matter that the COT Welfare Benefit Plan is covered by ERISA, and suggests Holding Capital is the employer providing benefits, D. 263 at 4–5, but does not suggest that the purpose of the COT was "to provide benefits [to employees] on a regular and long term basis."  Gross, 734 F.3d at 6 (internal citation and quotation marks omitted). Instead, the uncontested record here is that the Criminal Court concluded that the COT existed as a vehicle for the resale of STOLI policies.  Carpenter, 190 F. Supp. 3d at 275 (observing that while "[o]n its face, [the] COT appeared to be a multiple employer death benefit-only welfare benefit plan . . . [o]verwhelming evidence refutes" that this was its actual purpose).

---

[12] Because the Court otherwise concludes that *res judicata* does not bar Universitas's claims for the reasons discussed above, it does not reach Universitas's further argument that equitable considerations compel the same conclusion.  D. 258 at 12.

Moreover, Granderson herself concedes that the COT itself is not an "ERISA Plan," D. 243 at 13–14; and Nova, for which Robinson served as a corporate officer and corporate representative, conceded the same at the Arbitration, D. 258-1 at 3 (acknowledging that the COT "is not in fact an 'ERISA Plan,' which must be established, maintained and controlled by an employer," as "[t]he controlling party here is Nova"); D. 258-2 at 5 (conceding that the COT "is not strictly speaking an 'ERISA plan'"). Granderson has pointed to no contrary evidence. See D. 243 at 13–15; D. 258 at 6–7. ERISA preemption, therefore, does not apply because the first requirement for such preemption is not satisfied. Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 936 (8th Cir. 1999) (observing that "[s]ince the [plan at issue] is not an ERISA plan, there is no ERISA preemption of state-law claims relating to that plan").

D. **The Applicable Statutes of Limitations Do Not Bar Universitas's Claims**

1. *RICO Claim (Count I)*

Granderson argues that dismissal of the RICO claim and summary judgment denying the RICO claim are appropriate because the claim is barred by the applicable statute of limitations. D.242 at 4–9; D. 243 at 15–20. Civil RICO claims are subject to a four-year statute of limitations. Rotella v. Wood, 528 U.S. 549, 552 (2000). The statute of limitations accrues when "a plaintiff knew or should have known of his injury." Rodriguez v. Banco Cent., 917 F.2d 664, 665 (1st Cir. 1990). "[E]ach time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury." Id. at 665–66 (quoting Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)).

However, "[t]he federal doctrine of fraudulent concealment operates to toll the statute of limitations 'where a plaintiff has been injured by fraud and remains in ignorance of it without any

fault or want of diligence or care on his part.'" Salois v. The Dime Sav. Bank of N.Y. FSB, 128 F.3d 20, 25 (1st Cir. 1997) (quoting Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)). "Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim." Truck Drivers & Helpers Union v. NLRB, 993 F.2d 990, 998 (1st Cir. 1993). "To invoke the doctrine of fraudulent concealment, a plaintiff must plead and prove three elements: '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.' . . . The burden rests squarely on the party pleading fraudulent concealment." Berkson v. Del Monte Corp., 743 F.2d 53, 55 (1st Cir. 1984) (internal citations omitted). "[T]he affirmative act of denying wrongdoing . . . can be sufficient to invoke the doctrine" of fraudulent concealment. In re Atl. Fin. Mgmt., Inc. Sec. Litig., 718 F. Supp. 1003, 1011 (D. Mass. 1988) (citing Berkson, 743 F.2d at 56). "In those actions in which there was a fiduciary relationship, as in this case, plaintiffs are required to show only that defendants remained silent when they had a duty to disclose." Id. (citations omitted).

Because Universitas filed its complaint on May 14, 2015, D. 1, its RICO claims would be barred by the statute of limitations if Universitas discovered or reasonably should have discovered its injuries prior to May 14, 2011. Granderson asserts that Universitas was on notice of its injury by at least June 17, 2010, when it first filed a demand for Arbitration against the COT because, for example, from 2008 through 2009, Nova and Robinson repeatedly denied Universitas's entitlement to the benefits, either in whole or in part, and on October 2, 2009, formally denied Universitas's claim. D. 243 at 17–19. In addition, Granderson notes that by 2004, Carpenter had already been indicted for wire and mail fraud and Robinson's association with Carpenter was

"never a secret." Id. at 18. The denial of benefits, however, is not the only RICO injury at issue. Universitas also asserts it was injured by Carpenter's defalcation of the Spencer Proceeds and Robinson's misrepresentation that monies remained in the COT. See D. 237 ¶¶ 70–79; D. 1 ¶¶ 196–97; D. 237 at 39–42, 46. Unlike Lares Grp. II v. Tobin, 221 F.3d 41, 44-45 (1st Cir. 2000) where "the record contain[ed] ample evidence that [the parties asserting the RICO claim] knew of their injury prior to the statutory period," Granderson provides no evidence here that suggests Universitas should be charged with knowledge concerning the defalcation of the Spencer Proceeds prior to May 14, 2011, particularly in light of Robinson and Nova's efforts to conceal that the funds had been transferred. See, e.g., D. 237 ¶¶ 73–75; 259 ¶¶ 73–75; D. 237-12 at 9, 11 (Bursey's affidavit, Robinson's declaration).

The ruling in Universitas Education, LLC v. T.D. Bank, N.A., 15-cv-5643-SAS, 2015 WL 9304551, at *3 (S.D.N.Y. Dec. 21, 2015) does not warrant a different outcome as to this issue. There, Universitas alleged that T.D. Bank violated RICO by aiding and abetting the conversion of the Spencer Proceeds. T.D. Bank, 2015 WL 9304551, at *1–3. The court concluded the RICO claim was barred by the statute of limitations because "the only injury alleged in plaintiff's civil RICO claim is the conversion of the COT funds, of which plaintiff had actual notice in October 2009 when Nova Group formally denied plaintiff's claim to the trust funds." Id. at *3. The T.D. Bank decision did not concern the material and undisputed fact here that Universitas relied upon Robinson's continuing representations that the COT had sufficient funds to satisfy an arbitration award in continuing to pursue arbitration. D. 237 ¶ 79; D. 259 ¶ 79; D. 174 ¶ 14. In addition, when the court denied reconsideration of the T.D. Bank decision, it noted that T.D. Bank did not have a fiduciary relationship with Universitas, and T.D. Bank did not conceal the defalcation of the Spencer Proceeds. Universitas Educ., LLC v. T.D. Bank, N.A., No. 15-cv-5643-SAS, 2016 WL

80210, at *2 (S.D.N.Y. Jan. 5, 2016).  The same is not true here as to Robinson.  The Court, therefore, denies Granderson's motion for summary judgment on the RICO claim and its motion to dismiss the RICO claim, as the RICO claim is not time barred.[13]

### 2. *Aiding and Abetting Fraud (Count II)*

Fraud claims, including claims for aiding and abetting fraud, are generally subject to a six-year statute of limitations under New York law.  S.E.C. v. Lee, 720 F. Supp. 2d 305, 328 n.18 (S.D.N.Y. 2010); Dreamco Dev. Corp. v. Empire State Dev. Corp., 191 A.D.3d 1444, 1446 (2021). "However, a Court will not apply the six-year statute of limitations if the claim of fraud is merely incidental to another claim with a shorter limitations period."  Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 663 (S.D.N.Y. 2007) (citing Powers Mercantile Corp. v. Feinberg, 490 N.Y.S.2d 190, 192 (N.Y. App. Div. 1985)).  The parties do not appear to dispute that if this six-year statute of limitations applies, Universitas's claim would be timely.  D. 243 at 21–23; D. 258 at 17.  Instead, Granderson argues the fraud claim is merely "incident" to the RICO claim and, therefore, RICO's four-year statute of limitations applies instead.  D. 243 at 21–23.

As an initial matter, the Court notes that because the aiding and abetting fraud claim arises in part from Robinson and Bursey's misrepresentations regarding the COT's assets, the falsity of which was not knowable until November 2012, when Universitas received bank record from T.D. Bank, D. 258 ¶ 2, this claim would be timely even under the shorter limitations period.  But even if it were not, Granderson is incorrect that the shorter limitations period would apply to this claim.

---

[13] Because the RICO count survives Granderson's motion to dismiss, Universitas's complaint pleads a federal question, and the Court has supplemental jurisdiction over the remaining claims.  The Court, therefore, does not address Granderson's arguments regarding the presence of diversity jurisdiction.  D. 242 at 10–13.

In determining the appropriate statute of limitations, the relevant question is whether the fraud claim has "meaning and force independent of the plaintiff's other claims," in other words, does it "seek to remedy damage caused by deception itself." Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387, 395 (S.D.N.Y. 2010). Here, the fraud claim satisfies these criteria because Universitas asserts that it relied to its detriment upon Robinson's representations regarding the COT's assets in continuing to pursue Arbitration. D. 237 ¶ 79; D. 259 ¶ 79; D. 174 ¶ 14; cf. Marketxt, 693 F. Supp. at 394–97 (noting that "plaintiff has not alleged that [it] itself relied to its detriment on any specific misrepresentations made by [defendant]" in concluding that the three-year statute of limitations applicable to a claim of conversion should apply to a claim for aiding and abetting fraud because the purported fraudulent conduct "did not cause cognizable damage to [plaintiff] independent of that conversion"). Accordingly, the six-year statute of limitations applies and the claim for aiding and abetting fraud is, therefore, timely filed, and Granderson's motion for summary judgment with respect to this claim is denied.

3. *Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty (Counts III and VII)*

"Under New York law, the statute of limitations for breach of fiduciary duty depends on the substantive remedy which the plaintiff seeks." Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (internal citation and quotation marks omitted), aff'd, 320 F. App'x 48 (2d Cir. 2009); Marketxt, 693 F. Supp. 2d at 398 (noting the same with respect to a claim for aiding and abetting breach of fiduciary duty). Granderson argues that because the "gravamen" of the breach of fiduciary duty and aiding and abetting fiduciary duty claims is "conversion rather than fraud," the shorter four-year limitations period applicable to the RICO claim applies to these claims, rather than the six-year limitations period applicable to fraud claims. D. 243 at 23–24.

Again, the Court notes that because the claims arise in part from Robinson and Bursey's misrepresentations regarding the COT's assets the falsity of which was not knowable until November 2012, these claims would be timely even under the shorter limitations period. But even if they were not, Granderson is again incorrect that the shorter limitations period would apply to these claims, because they too are based upon Robinson's fraudulent conduct, specifically his efforts to conceal the disbursement of the Spencer Proceeds. D. 237 at 50–52; Pro Bono Invs., Inc. v. Gerry, 03-cv-4347-JGK, 2005 WL 2429787, at *14 (S.D.N.Y. Sept. 30, 2005) (observing that "[w]here, as here, the breach of fiduciary duty involves allegations of actual fraud, the statute of limitations is six years regardless of the remedy sought"). Granderson's motion for summary judgment is, therefore, denied with respect to claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, because these claims also are timely.

### 4.    Negligent Misrepresentation and Negligent Opinion (Counts IV and V)

"A claim of negligent misrepresentation . . . grounded upon essential allegations of actual or constructive fraud . . . is governed by a six-year limitations period." N.Y. State Workers' Comp. Bd. v. Comp. Risk Managers, LLC, 67 N.Y.S.3d 792, 802 (N.Y. Sup. Ct. 2017). Here, Universitas's claims for negligent misrepresentation and negligent opinion arise out of Robinson's November 30, 2010 declaration that the COT could satisfy a $30 million judgment. D. 237 at 61–62; see, e.g., id. ¶¶ 74–75; D. 259 ¶¶ 74–75; D. 237-12 at 11. Granderson asserts that because these misrepresentations were made "in furtherance of the conversion of the funds, the gravamen of Plaintiff's civil RICO claim in Count One," the four-year RICO limitations period should apply to these claims as well. D. 243 at 24–25.

Here, the six-year statute of limitations applies to these claims because they are "grounded upon essential allegations of actual or constructive fraud:" the gravamen of Universitas's allegations is that it relied to its detriment upon Robinson's representations regarding the COT's assets in continuing to pursue arbitration. N.Y. State Workers' Comp. Bd., 67 N.Y.S.3d at 802; see D. 237 ¶ 79; D. 259 ¶ 79; D. 174 ¶ 14; D. 237-15 at 36. Granderson's motion for summary judgment is, therefore, denied with respect to the timely claims for negligent misrepresentation and negligent opinion.

5. *Civil Conspiracy to Commit Fraud and Breach of Fiduciary Duty (Count VIII)*

According to New York law, "[t]he statute of limitations for civil conspiracy is the same as that for the underlying tort." Brady v. Lynes, No. 05-cv-6540-DAB, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008). In this case, because the Court has concluded the underlying torts of fraud and breach of fiduciary duty are not time-barred, neither is the civil conspiracy claim. Granderson's motion for summary judgment is, therefore, denied with respect to this claim.

6. *Unjust Enrichment (Count X)*

"Under New York law, the statute of limitations for unjust enrichment is three years when monetary relief is sought and six years when equitable relief is sought." Bascuñan v. Elsaca, No. 15-cv-2009-GBD, 2021 WL 3540315, at *6 (S.D.N.Y. Aug. 11, 2021). Here, Universitas's unjust enrichment claim seeks monetary relief, and is based upon Robinson's involvement with the embezzlement of the Spencer proceeds. See D. 1 ¶¶ 266–71. It is, therefore, subject to a three-year limitations period. City of Almaty, Kazakhstan v. Ablyazov, No. 15-cv-5345-AJN, 2018 WL 1583293, at *5 (S.D.N.Y. Mar. 27, 2018) (concluding an unjust enrichment claim based upon embezzlement is barred by a three-year statute of limitations). "Under New York law, the limitations period for unjust enrichment accrues 'upon the occurrence of the wrongful act giving

rise to a duty of restitution.'" Id. at *4 (quoting Golden Pac. Bancorp v. Fed. Deposit Ins. Corp., 273 F.3d 509, 520 (2d Cir. 2001)).  Here, the latest Universitas's unjust enrichment claim could possibly have accrued is May 11, 2011, the final date on which Robinson received funds purportedly derived from the Spencer Proceeds.  D. 237 ¶ 108; D. 259 ¶ 108; D. 237-14 at 68 (checks to Robinson).  Because Universitas filed its complaint on May 14, 2015, more than four years later, D. 1, the unjust enrichment claim would be time barred under the standard accrual rules.

Universitas posits that equitable estoppel saves its claims because Robinson prevented it from bringing suit by engaging in numerous bad acts, continuing until "at least September of 2012" to prevent Universitas from discovering that the Spencer Proceeds had been removed from the COT.  D. 258 at 19–20.  "Equitable estoppel is an 'extraordinary remedy,' that is to be 'invoked sparingly and only under exceptional circumstances.'"  Roeder v. J.P. Morgan Chase & Co., 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), aff'd, No. 21-cv-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (quoting Pulver v. Dougherty, 871 N.Y.S.2d 495, 497 (2009) and Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (further citations omitted)).  "[E]quitable estoppel . . . preclude[s] a defendant from using the statute of limitations as a defense 'where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding."  Putter v. N. Shore Univ. Hosp., 858 N.E. 2d 1140, 1142 (N.Y. 2006) (alteration in original) (citation omitted).

A plaintiff asserting equitable estoppel must establish three elements.  First, that the defendant "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct."  Overall v. Est. of Klotz, 52 F.3d 398, 404 (2d Cir. 1995) (quotation omitted).  "The courts draw 'an important distinction between fraudulent

concealment of the existence of a cause of action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware.'" Roeder, 523 F. Supp. 3d at 616–17 (quoting Pearl v. City of Long Beach, 296 F.3d 76, 84 (2d Cir. 2002)).  "Concealment of facts that would enhance the plaintiff's ability to prevail is not sufficient to invoke equitable estoppel."  Id. at 617.  "Second, the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations for equitable estoppel to apply."  Id. (internal citation and quotation marks omitted).  "Finally, a plaintiff must allege 'due diligence in bringing a claim when the conduct relied upon as the basis for equitable estoppel ceases to be operational.'"  Id.  (quoting Twersky v. Yeshiva Univ., 993 F. Supp. 2d 429, 443 (S.D.N.Y. 2014), aff'd, 579 F. App'x 7 (2d Cir. 2014)).

The undisputed facts show that Universitas has established the first element:  Robinson's fraudulent declaration regarding the COT's assets concealed the defalcation of the Spencer Proceeds and, therefore, prevented Universitas from discovering how those proceeds were distributed. D. 237 ¶ 74; D. 259 ¶ 74; D. 237-12 at 11.  With respect to the second element, because it is undisputed that Robinson's declaration was a sworn statement which the arbitrator required for its denial of Universitas's motion for a preliminary injunction, Universitas's reliance upon that declaration was reasonable.   D. 237-12 at 11 (Robinson's declaration); D. 237-15 at 36–37 (Arbitration Order).

With respect to the due diligence requirement, "[g]enerally, the outer limit for exercising due diligence would be the statute of limitations measured from the date when the facts giving rise to the estoppel have ceased to be operational." Twersky, 993 F. Supp. 2d at 443.  Universitas thus exercised due diligence by filing its complaint less than three years after November 2012, the date it received T.D. Bank records which revealed the defalcation of the Spencer Proceeds, D. 1; D.

258 ¶ 2. Accordingly, equitable estoppel saves Universitas's claim for unjust enrichment with respect to the statute of limitations.

### E.    Universitas's Entitlement to Summary Judgment At this Stage

Having now denied the motion to dismiss and Granderson's motion for summary judgment on the grounds of *res judicata,* ERISA and statute of limitations, the Court turns to Universitas's arguments for summary judgment. In doing so, the Court acknowledges that part of Granderson's opposition to this motion was based on her motion, pursuant to Rule 56(d), for an order requiring Universitas to provide her with copies of all discovery in its possession related to the underlying proceedings and extending the deadline for Granderson's opposition after such materials are received, D. 260; see D. 256, which this Court previously denied, D. 265.

Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, then "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014). To succeed on a Rule 56(d) motion, Granderson "must provide the court with: a timely statement – if not by affidavit, then in some other authoritative manner – that (i) explains . . . her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion." Emigrant Residential LLC v. Pinti, 37 F.4th 717, 725 (1st Cir. 2022) (internal citation and quotation marks omitted). In addition, because Rule 56(d) "is not designed to give relief to those who sleep upon their rights," Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc.,

730 F.3d 23, 29 (1st Cir. 2013) (quoting <u>Rivera-Torres v. Rey-Hernández</u>, 502 F.3d 7, 10 (1st Cir. 2007)), "a party seeking to derive the benefit of [this rule] must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced."  <u>Rivera-Almodóvar</u>, 730 F.3d at 29 (alteration in original) (quoting <u>Rivera-Torres</u>, 502 F.3d at 10–11).

> 1.   *Granderson Has Not Established Why the Requested Discovery is Essential to Her Opposition, or How It Would Influence the Outcome of the Pending Summary Judgment*
> *Motion*

Granderson has not met the requirements of Rule 56(d).  With respect to the first and third requirements for relief, Granderson has not established how the requested discovery is "essential" to her opposition, or how it would influence the outcome of the pending summary judgment motion where, as discussed in more detail below, significant, uncontroverted evidence, establish the essential elements of Universitas's claims.[14]  For example, there can be no dispute that Robinson made misrepresentations regarding the COT's assets.  Specifically, at the motion hearing, counsel for Granderson suggested there was a dispute regarding whether the COT funds were disbursed before Robinson swore in his November 30, 2010 declaration that the COT had the current ability to satisfy the $30 million judgment.  D. 276 at 17; 237-12 at 11.  But Granderson herself admitted that both the COT and Nova closed their bank accounts in June 2010.  D. 259 ¶ 75; D. 237-12 at 19–22 (bank statements).

---

[14] In her declaration in support of Granderson's motion pursuant to Rule 56(d), counsel for Granderson, asserts, in a conclusory manner, that she "has good cause to believe that full and complete transcripts and document production and the ability to review same, will [a]ffect the pending motions for summary judgment and provide material information," D. 260-1 ¶ 28, but does not explain how such documents "would influence the outcome of the pending summary judgment motion," as required under Rule 56(d), <u>Emigrant</u>, 37 F.4th at 725.

Likewise, Granderson does not appear to dispute that Robinson authored other communications to Universitas that contained misrepresentations.  For example, Robinson claimed that GMC was entitled to the Spencer Proceeds based upon an agreement in which Spencer purportedly assigned his interest in the COT to GMC, D. 243 ¶ 11; D. 258 ¶ 1; 237 ¶ 52; D. 259 ¶ 52, but an interim arbitration award, confirmed by SDNY, concluded that no credible evidence showed that the COT and GMC ever consummated an agreement that competed with Universitas's claim for the Spencer Proceeds.  D. 243 ¶¶ 20–22; 258 ¶ 3; D. 237 ¶¶ 83–87; 259 ¶¶ 83–85; D. 237-12 at 64–77; Universitas, 2012 WL 2045942, at *3.  In addition, Robinson claimed that Universitas had failed to file a timely claim with the COT for the death benefits from the Spencer policies when Universitas had already filed such a claim.  D. 243 ¶¶ 10, 16; D. 258 ¶ 1; D. 237 ¶ 51; D. 259 ¶ 51; D. 237-9 at 67–72.  Nor does there appear to be any dispute that Robinson circulated two versions of a spreadsheet which the Criminal Court determined "became the basis for [the] COT" and "contemplated the resale of life insurance policies on the secondary market after the contestability period."  Carpenter, 190 F. Supp. 3d at 276; D. 237-1 at 2–5.

At the motion hearing, counsel for Granderson noted that she expected the additional documents and transcripts would relate to her arguments regarding the relevant statutes of limitation.  D. 276 at 14.  But Granderson's Rule 56(d) motion seeks relief only as to Universitas's motion for summary judgment, D. 236, which does not raise any arguments concerning the relevant statutes of limitation, see D. 237.  D. 260; see D. 256.  Instead, the statutes of limitation are relevant only to Granderson's own motion for summary judgment, D. 241; D. 243 at 15–26.  Granderson's failure to establish how the requested discovery is essential to her opposition, or how

it would influence the outcome of the pending summary judgment motion suffices to deny her Rule 56(d) motion.[15]

###### 2. *Granderson and Her Predecessor Were Not Diligent in Conducting Discovery*

Even assuming Granderson had demonstrated that the requested discovery was essential, she would still not be entitled to relief because she has not demonstrated due diligence in conducting discovery. Rivera-Almodóvar, 730 F.3d at 29. Although Granderson indicated in the parties' joint statement upon remand seeking a schedule for the filing of summary judgment motions, that she "may seek to reopen discovery if necessary during the summary judgment proceedings," D. 227 ¶ 17, she did not seek any discovery period at that and the measure of discovery efforts does not start with Granderson, but with Robinson for whom she was properly substituted. Prior to Robinson's death, he had at least twenty months to seek discovery from Universitas. See D. 31 (December 11, 2015 scheduling order setting the close of fact discovery for September 9, 2016); D. 92 (November 30, 2016 order extending the close of fact discovery to April 14, 2017); D. 112 (April 7, 2017 order allowing Universitas's motion to extend the discovery schedule by four months to August 14, 2017; see Dunlap v. Sevier Cnty., Tennessee, No. 20-cv-6216, 2021 WL 3123914, at *3 (6th Cir. July 23, 2021) (finding no abuse of discretion where district court denied a substituted party's Rule 56(d) motion where her predecessor "had sufficient time and opportunity to collect the information necessary to contest summary judgment" and the substituted party "made no serious effort to collect discovery" in the months after her predecessor's

---

[15] In addition to these deficiencies, counsel's declaration does not specifically articulate a "plausible basis for believing that the sought-after facts can be assembled within a reasonable time," as required by Rule 56(d). Emigrant, 37 F.4th at 725.

death and "similarly made no attempt to stay discovery and preserve plaintiff's ability to conduct discovery in the future"). Robinson does not appear to have made a good faith effort to comply with discovery requests during this period. See D. 101 ¶¶ 3–4, 7 (Universitas's March 27, 2017 motion seeking to extend the discovery schedule to August 14, 2017 in part because "Robinson is . . . contending that he no longer has possession and control of numerous relevant documents (including the hard drive from his office computer) and thus has no ability to produce such documents, therefore requiring Universitas to seek the documents from secondary sources" and as a result, delaying depositions); D. 112 (order allowing D. 101); D. 128 ¶ 5 (Universitas's August 15, 2017 motion seeking to extend the discovery schedule by an additional four months to December 14, 2017 in part because Robinson was refusing to participate in discovery, claiming that his motion to compel arbitration imposed "a *de facto* discovery stay").[16]

Nor does Granderson suggest that she made any effort to obtain the discovery she seeks from the former counsel for Robinson, her predecessor in interest. See D. 256; D. 260; D. 257 ¶ 17. It also cannot be said that Granderson was diligent in pursuing an extension as to same after the filing of Universitas' summary judgment motion. On August 2, 2024, twenty days prior to Universitas's filing of its motion for summary judgment, Universitas, informed counsel for Granderson that "all documents [Universitas] intend[s] to rely on [for summary judgment] are already on the docket attached to the original September 3, 2019 motion for summary judgment," and offered to send a link to those documents. D. 257-1 at 3 (referencing D. 172 and the attached exhibits). Counsel for Granderson, responded to this e-mail on August 5, 2024, but did not request any documents, and did not note that some of the documents referenced were excerpted. Id. at 1. On August 22, 2024, Universitas filed its motion for summary judgment, attaching the same

---

[16] Robinson opposed this motion, D. 129, but died while the motion was pending, D. 131.

documents.  D. 236; D. 237.  On September 18, 2024, Granderson (with the assent of Universitas) requested to extend the deadline to file her opposition to October 15, 2024.  D. 247.  The Court allowed the extension.  D. 250.  Granderson then waited until October 14, 2024, one day prior to her deadline to file her opposition, to seek to further extend the deadline because of purported discovery deficiencies.  D. 256[17]; see Rios v. Centerra Grp. LLC, 106 F.4th 101, 122 (1st Cir. 2024) (affirming the denial of a Rule 56(d) motion filed the same day the summary judgment opposition was due and after the court granted an initial extension request).

Robinson's conduct of discovery, in concert with Granderson's lack of diligence, further counseled against granting Granderson relief under Rule 56(d).  For these reasons, the Court denied Granderson's Rule 56(d) motion and determined that consideration of Universitas's motion for summary judgment was appropriate.  D. 265.

### F.    There is No Genuine Dispute of Fact that Robinson is Liable for Violating RICO (Count I)

The RICO statute makes it unlawful for "any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  A civil RICO claim requires:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 419 F. Supp. 3d 176, 189 (D. Mass. 2019) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

---

[17] Granderson's motion for an extension of time to file her opposition to Universitas's motion for summary judgment, D. 256, does not reference Rule 56(d) and did not include a supporting affidavit as required under that rule.  Granderson's only motion pursuant to Rule 56(d), D. 260, accompanied by a supporting declaration from her attorney, D. 260-1, was filed two days later, after the deadline for her opposition had passed.

To constitute an "enterprise" under RICO, "the group must have '[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose.'" United States v. Rodríguez-Torres, 939 F.3d 16, 24 (1st Cir. 2019) (alterations in original) (quoting Boyle v. United States, 556 U.S. 938, 946 (2009)) (noting that "[t]he group need not have some decisionmaking framework or mechanism for controlling the members"). "'Racketeering activity' means any act that violates one of the federal laws specified in the RICO statute, including the mail and wire fraud statutes." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005) (internal citations omitted). To show a "pattern," a plaintiff must allege "two acts of racketeering activity," "within ten years of each other," that are "related" and "amount to or pose a threat of continued criminal activity." Id. A plaintiff may show that the wrongful activity at issue satisfies the continuity requirement in one of two ways: by using the "closed-ended" approach, which requires a plaintiff show "a series of related predicates extending over a substantial period of time" that amount to "a threat of continued criminal activity," or by using the "open-ended" approach, which requires a plaintiff to show "a specific threat of repetition extending indefinitely into the future" or as "part of an ongoing entity's regular way of doing business." Id. at 387 (citation omitted).

Here, the enterprise requirement is satisfied where it is undisputed that Carpenter controlled business entities including the COT and Nova, D. 237 ¶ 7; D. 259 ¶ 7, BASI aggregated resources and employees from numerous other business entities including Nova, the COT, GMC, Grist Mill Holding and Avon Capital, D. 237 ¶ 9; D. 259 ¶ 9; D. 237-3 at 32, and Robinson served as an officer for multiple CCEs. D. 237 ¶¶ 14, 34; D. 259 ¶¶ 14, 34.

The uncontroverted evidence also makes clear that various individuals associated with Carpenter and the CCEs engaged in racketeering activity through the commission of multiple

predicate crimes under the RICO statute, 18 U.S.C. § 1961, including wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, money laundering in violation of 18 U.S.C. § 1956 and illegal monetary transactions in violation of 18 U.S.C. § 1957. D. 237 at 38–45. In fact, Carpenter was found guilty of numerous predicate crimes. Carpenter, 190 F. Supp. 3d at 263–301. The undisputed record here is that Robinson engaged multiple counts of mail fraud by sending fraudulent letters to Universitas across state lines. See D. 237 at 40–42; D. 237-6 at 56–58 (letter sent across state lines claiming a twenty percent holdback provision was in effect); D. 237-11 at 18–22 (same); D. 237-9 at 2–5 (letter sent across state lines claiming GMC had a competing claim to the Spencer Proceeds).

Granderson also suggests, in a conclusory fashion that Universitas "has not established that [] Robinson took at least some part in directing the enterprise's affairs" or that he "knowingly engaged in any conduct which would violate RICO." D. 259 at 15 (emphasis omitted). This is incorrect. The Supreme Court has made clear that "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," Reves v. Ernst & Young, 507 U.S. 170, 179 (1993), but only "*some* part in directing the enterprise's affairs is required." Id. (emphasis in original). Here, where Robinson communicated directly and indirectly with Universitas concerning the Spencer Proceeds, D. 243 ¶¶ 5–6, 9–11, 13; D. 258 ¶ 1; D. 237 ¶¶ 34–35, 46–47, 49, 51–53, 57, 65; D. 259 ¶¶ 34–35, 46–47, 49, 51–53, 57, 65, and held leadership positions in entities involved with the defalcation of the Spencer Proceeds, D. 237 ¶¶ 14, 34; 259 ¶¶ 14, 34, there can be no genuine dispute of fact that he took at least some part in directing the enterprise's affairs.

Similarly, although Granderson suggests there is a dispute of fact regarding Robinson's knowledge, D. 259 at 15, she points to no evidence suggesting otherwise. The undisputed facts

show the contrary.  For example, it is undisputed that Robinson helped cover up the defalcation of the Spencer Proceeds by, on November 30, 2010, submitting a declaration to the Arbitration stating that he was familiar "with the [the COT's] operations, assets, liabilities and financial condition, and state that the [COT] has the current ability to satisfy a judgment of $30 million," when the COT had, in fact, closed its bank account in June 2010.  D. 237 ¶¶ 74–75; D. 259 ¶¶ 74–75; D. 237-12 at 11.

Granderson suggests that Universitas has not set forth any evidence to show that Robinson was involved in the fraudulent applications for the STOLI policies, and appears to assert that, in the absence of such evidence, Universitas has failed to show that Robinson has engaged in a pattern of racketeering activity.  D. 259 at 13–15.  As an initial matter, the Court notes that Robinson's involvement with the defalcation of the Spencer Proceeds would not necessarily, on its own, be sufficient to establish his liability under RICO.  See Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 530 (1st Cir. 2015) (noting the First Circuit has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims" (quoting Giuliano, 399 F.3d at 390)); Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992) (concluding that "several instances of criminal behavior," including making bribes and false statements, were "appropriately characterized as separate parts of a single criminal episode" because they "comprise[d] a single effort to obtain (and to keep) one $96 million Defense Department contract").

But the analysis does not end there because, contrary to Granderson's assertion, D. 259 at 14–15, the undisputed evidence here makes clear that in addition to the defalcation of the Spencer Proceeds, Robinson was involved with the fraudulent applications for STOLI policies. Specifically, it is undisputed that Robinson served as a liaison for entities in the Carpenter

organization and third parties, took part in negotiations with Ridgewood on behalf of GMC and Nova and signed both GMC and Nova's agreements with Ridgewood.  D. 237 ¶ 16; D. 259 ¶ 16; D. 237-5 at 9; D. 237-6 at 29–34 (GMC appointment agreement, signed by Robinson as "Manager" of GMC); D. 237-6 at 36–41 (Nova appointment agreement, signed by Robinson as "Asst. Secretary" to Nova).  It is also undisputed that Robinson served as the General Counsel and Vice President for Nova, trustee of the COT, which misrepresentations in its policy applications related to the source of funding for premiums and resale of policies, <u>Carpenter</u>, 190 F. Supp. 3d at 281; <u>see</u> D. 237 ¶¶ 13–14, 34; D. 259 ¶¶ 13–14, 34; D. 237-2 at 10, 14–15 (transcript of deposition of Robinson); D. 237-6 at 58 (letter signed by Robinson as Vice President to Nova).  In addition, two spreadsheets Robinson circulated "became the basis for [the] COT" and "contemplated the resale of life insurance policies on the secondary market after the contestability period."  <u>Carpenter</u>, 190 F. Supp. 3d at 276; <u>see</u> D. 237-1 at 2–5.  No reasonable jury could find this evidence insufficient to establish that Robinson was involved in obtaining the fraudulent applications for the STOLI policies.  In addition, no reasonable jury could find these activities unrelated to Robinson's efforts to defalcate the proceeds of one such policy, or deny that together these activities "amount to or pose a threat of continued criminal activity."  <u>ICONICS, Inc. v. Massaro</u>, 192 F. Supp. 3d 254, 268 (D. Mass. 2016).  Universitas has thus established a pattern of racketeering activity under RICO.

In short, there is no genuine dispute of fact that Robinson participated in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Sterling</u>, 419 F. Supp. 3d at 189.  In addition, there is also no dispute that Universitas was damaged by that racketeering activity, which prevented it from recovering the Spencer Proceeds.  Universitas is, therefore, entitled to summary judgment on its RICO claim.

**V.     There is No Genuine Dispute of Fact that Robinson Breached His Fiduciary Duty to Universitas (Count III)**

Under New York law, to establish a breach of fiduciary duty a plaintiff must demonstrate: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Baldeo v. Majeed, 55 N.Y.S.3d 340, 344 (N.Y. App. Div. 2017).  Granderson focuses her dispute on the first element and insists, in a conclusory manner, that "there are genuine issues of material fact" regarding whether Robinson, Nova or Bursey owed a fiduciary duty to Universitas and whether Robinson was in control of Nova.  D. 259 at 15–16.  But New York law makes clear that trustees owe fiduciary duties to the beneficiaries of a trust, Milea v. Hugunin, No. 08-cv-2941, 2009 WL 1916400, at *6 (N.Y. Sup. Ct. 2009), and it is undisputed that Nova was the trustee of the COT, D. 237 ¶ 5; D. 259 ¶ 5, Universitas was a beneficiary, D. 237 ¶ 22; D. 259 ¶ 22, and Robinson was Nova's Vice President and General Counsel, D. 237 ¶¶ 14, 34; D. 259 ¶¶ 14, 34.   Granderson has not articulated any reason why Robinson's fraudulent representations concerning, for example, Universitas's entitlement to the Spencer Proceeds and the COT's assets, see D. 237-6 at 56–58; D. 237-11 at 18–22; D. 237-9 at 2–5; D. 237-12 at 11, are insufficient to establish a breach of fiduciary duty.  D. 259 at 15–16; see D. 264 at 5–7.  Nor is there any question that Universitas was damaged by Robinson's fraudulent conduct, which has prevented it from recovering the Spencer Proceeds.  The Court, therefore, allows Universitas's motion for summary judgment with respect to the breach of fiduciary duty claim.

**A.     There is No Genuine Dispute of Fact that Robinson Aided and Abetted Nova and Bursey's Breach of Their Fiduciary Duty to Universitas (Count VII)**

Under New York law, "[a] claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach."  Katz

v. Beil, 142 A.D.3d 957, 963 (N.Y. App. Div. 2016) (quoting Kaufman v. Cohen, 307 A.D.2d 113, 125 (N.Y. App. Div. 2003)).

With respect to the first and second elements, Granderson asserts "there are genuine issues of material fact" regarding whether Bursey or Nova owed a fiduciary duty to the Plaintiff and whether they breached that duty, D. 259 at 16. But as discussed above, it is undisputed that Nova, as trustee to the COT owed fiduciary duties to Universitas, its beneficiary. D. 237 ¶¶ 5, 22; D. 259 ¶¶ 5, 22; see D. 237-7 at 44. It is also undisputed that Bursey was the named trustee of the COT, and, therefore, owed Universitas the same fiduciary duties. D. 237 ¶ 25; D. 259 ¶ 25; D. 237-7 at 60–69.

In addition, as discussed, it is undisputed that Nova and Bursey breached that duty by withholding the Spencer proceeds, and that Robinson knowingly induced or participated in the breach by, for example, representing on behalf of Nova that the COT was entitled to keep $6 million in fees from the $30 million in death benefits based upon certain purported amendments to the declaration of trust that were never produced, D. 243 ¶¶ 5–8; D. 258 ¶ 1; D. 237 ¶¶ 34–35; D. 259 ¶¶ 34–35, falsely claiming on behalf of Nova that Universitas had failed to file a timely claim with the COT for the Spencer Proceeds when Universitas had already filed a claim, D. 243 ¶¶ 10, 16; D. 258 ¶ 1; D. 237 ¶ 51; D. 259 ¶ 51, and helping conceal the defalcation of the Spencer Proceeds by attesting to the aforementioned declaration to the Arbitration, D. 237 ¶¶ 74–75; D. 259 ¶¶ 74–75; D. 237-12 at 11.

Here again, Granderson has not articulated any reason why the undisputed facts Universitas has relied upon are insufficient to establish a claim for aiding and abetting a breach of fiduciary duty. D. 259 at 16; see D. 264 at 5–7. In addition, there is no dispute with respect to damages as Robinson, Bursey and Nova's actions prevented Universitas from recovering the $30 million

Spencer Proceeds. The Court, therefore, allows Universitas's motion for summary judgment with respect to the claim for aiding and abetting a breach of fiduciary duty.

**B.    There is No Genuine Dispute of Fact that Robinson is Liable for Negligent Misrepresentation and Negligent Opinion (Counts IV and V)**

Under New York law, a claim for negligent misrepresentation requires "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148 (2007) (citations omitted).

With respect to the first requirement, Granderson asserts in her motion for summary judgment that Universitas cannot show it had a special relationship with Robinson because "Robinson was not counsel for Universitas" and was instead, "counsel for an opposing party in an arbitration." D. 243 at 26–27. But Granderson ignores that Robinson, as an officer to Nova, the trustee of the COT, owed fiduciary duties to Universitas, and a fiduciary relationship necessarily implies a special relationship. Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 28 (S.D.N.Y. 2009) (observing that "the standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty"), aff'd, 382 F. App'x 107 (2d Cir. 2010).

Granderson does not dispute the second requirement, D. 259 at 17, and the undisputed facts demonstrate that the representation at issue – Robinson's November 30, 2010 declaration affirming the COT's ability to satisfy a $30 million judgment – was false. D. 237 ¶¶ 74–75; D. 259 ¶¶ 74–75; D. 237-12 at 11, 19–22.

With respect to the third requirement, Granderson disputes whether Universitas's reliance upon the misrepresentation was reasonable. D. 259 at 17. According to Granderson, "a plain

reading of Plaintiff's allegations and the story Plaintiff sets forth shows that at the time Mr. Robinson made the misrepresentations, the Plaintiff had an obligation to investigate the statements." Id. Reasonableness is measured "in the context of circumstances." Gomez-Jimenez v. N.Y. L. Sch., 943 N.Y.S.2d 834, 853 (N.Y. Sup. Ct. 2012), aff'd, 56 N.Y.S.2d 54 (2012). "When a party is aware of circumstances that indicate certain representations may be false, that party cannot reasonably rely on those representations, but must make additional inquiry to determine their accuracy." Keywell Corp. v. Weinstein, 33 F.3d 159, 164 (2d Cir. 1994).

Here, Robinson did not provide Universitas with any indicia that his statement was false, and instead made the misrepresentation at issue through a sworn declaration. D. 237-12 at 11. Nor was Universitas alone in its reliance upon this misrepresentation. Indeed, the arbitrator's denial of Universitas's motion for a preliminary injunction was contingent upon Nova's provision of proof or a sworn assurance that the COT could satisfy a $30 million judgment. D. 237-15 at 36–37. Even viewing the evidence in the light most favorable to Granderson, we conclude that no reasonable jury could find that Universitas's reliance upon Robinson's statement was unreasonable in these circumstances. Universitas's motion for summary judgment on these claims is, therefore, allowed, and Granderson's motion for the same is denied.

### C.    Universitas Is Not Entitled to Judgment on its Unjust Enrichment Claim Because It Has an Adequate Remedy at Law (Count X)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) (quoting Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006)) (further citation omitted).

Granderson asserts there is a genuine issue of material fact regarding whether the requisite relationship between Robinson and Universitas existed, and whether the money Robinson received was at the expense of Universitas or due to Robinson for a reason unknown to Universitas. D. 259 at 18. As discussed, the parties maintained the requisite relationship because Robinson, as an officer to Nova, the trustee of the COT, had a fiduciary relationship with Universitas, the COT's beneficiary. D. 237 ¶¶ 5, 14, 22, 34; D. 259 ¶¶ 5, 14, 22, 34; Milea, 2009 WL 1916400, at *6. With respect to the distribution of funds, the undisputed facts show that the transfers to Robinson can be traced back to the transfer of the Spencer Proceeds from the COT. See D. 237 ¶¶ 98–112; 259 ¶¶ 98–112. The undisputed facts also show that Robinson provided fraudulent explanations for the denial of Universitas's claim for the Spencer Proceeds, see, e.g., D. 243 ¶ 11; D. 258 ¶ 1; 237 ¶ 52; D. 259 ¶ 52, and submitted a fraudulent declaration concerning the COT's assets, D. 237 ¶ 74; D. 259 ¶ 74; D. 237-12 at 11. Given this record and no alternative explanations for the payments to Robinson, D. 259 at 18, there is no genuine question that Robinson benefitted at Universitas's expense, and equity and good conscience would require restitution of the funds from Robinson, a fiduciary to Universitas, the named beneficiary of the Spencer Proceeds.

Universitas is, nevertheless, not entitled to judgment on its unjust enrichment claim because its RICO and state law claims provide an adequate remedy at law. See, e.g., Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (N.Y. 2012) (observing that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim") (citations omitted); Allstate Ins. Co. v. Nazarov, No. 11-cv-6187-PKC-VMS, 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015) (noting that while plaintiffs had otherwise established unjust enrichment, that claim was not available because defendants were liable for common law fraud).

With respect to the unjust enrichment claim, Universitas's motion for summary judgment is, therefore, denied, and Granderson's motion for summary judgment is allowed.

**D.     There is No Genuine Dispute of Fact that Robinson Aided and Abetted Fraud (Count II)**

A claim for fraud under New York law requires a plaintiff to establish "[1] a misrepresentation or a material omission of fact [2] which was false and known to be false by defendant, [3] made for the purpose of inducing the other party to rely upon it, [4] justifiable reliance of the other party on the misrepresentation or material omission, and [5] injury." William Doyle Galleries, Inc. v. Stettner, 167 A.D. 3d 501, 503 (2018).

With respect to the first and second elements, the undisputed facts reveal that Bursey made a material misrepresentation when on November 12, 2010, he submitted an affidavit stating that Nova had assets in excess of $35 million.  D. 237 ¶¶ 73, 75; 259 ¶¶ 73, 75; D. 237-12 at 9.  With respect to the third element, given context, Bursey's misrepresentation was meant to induce Universitas to believe the Spencer Proceeds were still held in the COT.  See D. 237 at 68–69.  As discussed above, Universitas's reliance upon this misrepresentation was reasonable, and there is no question that Universitas was damaged as a result of this misrepresentation.  As Granderson neither offers any competing evidence nor provides any substantive discussion of this claim, see D. 259 at 15–16, Universitas has established that Nova and Bursey committed fraud.

"To establish liability for aiding and abetting fraud, the plaintiffs must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc., 651 F. Supp. 2d 155, 186–87 (S.D.N.Y. 2009) (internal citation, alterations and quotation marks omitted).  Robinson's November 30, 2010 declaration to the arbitrator satisfies the second requirement because Robinson affirmed Bursey's fraudulent

46

representation.  D. 237-12 at 11.  Robinson's declaration also satisfies the third requirement because, as Universitas explains, it "help[ed] to conceal Bursey's fraud by preventing further inquiry into the location of the Spencer proceeds."  Id.; D. 237 at 70.  Since Granderson fails to provide any substantive discussion of this claim, see D. 259, summary judgment is appropriate.

**E.    There is No Genuine Dispute that Robinson is Liable for Civil Conspiracy to Commit Fraud and Breach of Fiduciary Duty (Count VIII)**

Under New York law, "[t]o establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements:  (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  World Wrestling Fed'n Ent., Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).  An "allegation of conspiracy carries no greater burden . . . than to assert adequately common action for a common purpose by common agreement or understanding among a group."  Goldstein v. Siegel, 19 A.D.2d 489, 493 (N.Y. App. Div. 1963).

As discussed above, Universitas has established that Robinson committed the underlying torts of fraud and breach of fiduciary duty.  Although Granderson has not substantively opposed summary judgment on this claim (i.e., she references the civil conspiracy claim only in a header, but does not provide a substantive basis for her opposition to summary judgment, D. 259 at 15–16), the Court addresses the elements of this claim.

With respect to the first element of civil conspiracy, Universitas has pointed to evidence supporting the existence of an agreement among Robinson and others associated with the CCEs to retain the Spencer Proceeds.  See D. 237 at 72–73.  For example, in December 2006, Robinson circulated two versions of a spreadsheet which "became the basis for [the] COT, contemplated the

47

resale of life insurance policies on the secondary market after the contestability period" and suggested charging the same fees Robinson insisted the COT was owed from the Spencer Proceeds. Carpenter, 190 F. Supp. 3d at 276; D. 237-1 at 2–5; D. 237-6 at 56–58. In an August 20, 2009 email, Bursey requested "an executive board meeting" including "Dan" (a.k.a. Carpenter) and "Jack," (a.k.a. Robinson) among others, to get on the same page regarding the "[Lincoln] interest payable to COT on Spencer death, Sash Spencer DB payable to beneficiaries, [and] COT plans going forward." D. 237-11 at 2. In addition, the parties do not dispute that Robinson drafted a communication Bursey signed regarding the distribution of the Spencer Proceeds, D. 237 ¶ 57; D. 259 ¶ 57, or that individuals within the CCEs communicated regarding their responses to Universitas, see, e.g., D. 237-8 at 186–87. Collectively, and in the absence of any contrary evidence from Granderson, these facts are sufficient to establish that Robinson's efforts to deny the Spencer Proceeds were coordinated through an agreement with at least Carpenter and Bursey.

As to the second element, Robinson engaged in multiple acts in furtherance of the conspiracy. D. 237 at 73–74. To provide just one example, Robinson denied that Universitas had filed a timely claim for the Spencer Proceeds when Universitas had already filed a claim. D. 243 ¶¶ 10, 16; D. 258 ¶ 1; D. 237 ¶ 51; D. 259 ¶ 51. With respect to the third element, the undisputed facts reveal that Robinson made multiple fraudulent representations, see, e.g., D. 243 ¶¶ 10, 16; D. 258 ¶ 1; D. 237 ¶ 51; D. 259 ¶ 51. With respect to the final element, Universitas has, again, established damages because it would have received the Spencer Proceeds if the conspiracy had not accomplished its purpose. See D. 237 at 75. Summary judgment is, therefore, appropriate with respect to the civil conspiracy claim.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Granderson's motion to dismiss, D. 240, ALLOWS Granderson's motion for summary judgment with respect to unjust enrichment (Count X), but DENIES Granderson's motion for summary judgment with respect to all other counts, D. 241.  The Court DENIES Universitas's motion for summary judgment with respect to unjust enrichment but ALLOWS Universitas's motion for summary judgment with respect to all other counts, D. 236.

**So Ordered.**

/s Denise J. Casper
United States District Judge